*Jusino v. Fed'n of Cath. Tchrs., Inc.*

# United States Court of Appeals
## For the Second Circuit

August Term 2021

Submitted: June 8, 2022
Decided: November 23, 2022

No. 21-2081

RAMON K. JUSINO,

*Plaintiff-Appellant,*

*v.*

FEDERATION OF CATHOLIC TEACHERS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of New York
No. 19-cv-6387, Ann M. Donnelly, *Judge*.

Before: CALABRESI, LYNCH, and SULLIVAN, *Circuit Judges*.

Ramon K. Jusino, formerly a tenured theology teacher at a Roman Catholic high school in Staten Island, appeals from the dismissal of his complaint against his labor union, the Federation of Catholic Teachers (the "FCT"), for allegedly breaching its duty of fair representation under the National Labor Relations Act (the "NLRA") as amended by the Labor Management Relations Act (the "LMRA"), and for assorted violations under the New York State and New York City human rights laws. The district court (Donnelly, *J.*) dismissed Jusino's duty-of-fair-representation claim with prejudice for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), reasoning that the NLRA and

LMRA are inapplicable to disputes between parochial-school teachers and their labor unions under *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). The district court then declined to exercise supplemental jurisdiction over Jusino's state- and municipal-law claims, which it dismissed without prejudice. We conclude, as a matter of first impression, that *Catholic Bishop* does preclude Jusino's duty-of-fair-representation claim, but that dismissal was warranted under Rule 12(b)(6) for failure to state a claim on which relief could be granted, rather than for lack of federal subject-matter jurisdiction under Rule 12(b)(1). We also conclude that Jusino has abandoned any challenge to the dismissal of his state- and municipal-law claims. As a result, we **AFFIRM** the judgment of the district court.

Judge Calabresi concurs in a separate opinion.

AFFIRMED.

> Ramon K. Jusino, pro se, Staten Island, NY, *for Plaintiff-Appellant*.
>
> Jane Lauer Barker, Andrew D. Midgen, Pitta LLP, New York, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Ramon K. Jusino was suspended from his position as a tenured theology teacher at Notre Dame Academy, a Roman Catholic high school in Staten Island, after giving a controversial lecture on racism and human sin. Jusino's labor union, the Federation of Catholic Teachers (the "FCT"), initiated a formal grievance on his behalf and commenced arbitration proceedings against Notre Dame, asserting that his suspension constituted a breach of the applicable collective bargaining agreement. But when Jusino asked the FCT to raise additional allegations of

2

discrimination and retaliation at the arbitration, it refused. Jusino then sued the FCT for this alleged breach of its duty of fair representation under the National Labor Relations Act of 1935 (the "NLRA"), 29 U.S.C. § 151 *et seq.*, as amended in relevant part by section 301 of the Taft-Hartley Act of 1947 (commonly known as the Labor Management Relations Act, or the "LMRA"), *id.* § 185. He also sued the union under the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Relying on the Supreme Court's holding in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), the district court (Donnelly, *J.*) dismissed the duty-of-fair-representation claim with prejudice for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), reasoning that the NLRA and LMRA are inapplicable to disputes between parochial-school teachers and their labor unions. The district court then declined to exercise supplemental jurisdiction over the state- and municipal-law claims, which it dismissed without prejudice.

On appeal, we are tasked with deciding four questions: *first*, whether the district court properly concluded that *Catholic Bishop* precludes a parochial-school teacher's duty-of-fair-representation claim against his labor union under the

3

NLRA as amended by the LMRA; *second*, if so, whether the inapplicability of the NLRA and LMRA is jurisdictional in character – such that Jusino's duty-of-fair-representation claim was properly dismissed under Rule 12(b)(1) as opposed to Rule 12(b)(6); *third*, if the latter, whether the appropriate appellate remedy is to vacate the dismissal order with instructions to re-dismiss or simply to affirm such order on different grounds; and *fourth*, whether the district court properly declined to exercise supplemental jurisdiction over Jusino's state- and municipal-law claims. We conclude, as a matter of first impression, that *Catholic Bishop* does preclude Jusino's duty-of-fair-representation claim here, but that its application requires dismissal under Rule 12(b)(6) for failure to state a claim on which relief could be granted, rather than for lack of federal subject-matter jurisdiction under Rule 12(b)(1). We also conclude, as compelled by our precedents, that affirmance is the proper appellate remedy in this scenario. Finally, we find that Jusino has abandoned any challenge to the dismissal of his state- and municipal-law claims. As a result, we **AFFIRM** the judgment of the district court.

4

# I. BACKGROUND

## A. Facts

The FCT is the labor union that serves as the exclusive bargaining agent and labor representative for lay teachers in Catholic schools in New York City and several surrounding counties. Until August of 2018, Jusino was a tenured theology teacher at Notre Dame Academy of Staten Island ("Notre Dame"), a Catholic all-girls high school located within the Roman Catholic Archdiocese of New York. The terms of Jusino's employment at Notre Dame were governed from September 1, 2014 through August 31, 2018 by a collective bargaining agreement (the "CBA") between the FCT and Notre Dame (through its membership in the Association of Catholic Schools). The CBA provided that tenured teachers, such as Jusino, could only be terminated for just cause. It also provided that "the Employer . . . shall [not] discriminate against teachers on the basis of . . . race, color, national origin[,] or sex" and explicitly incorporated into "the terms of employment of teachers in the member schools . . . all . . . statutes governing non-discrimination in employment . . . and all other applicable legislation, governmental regulations[,] or judicial determinations [thereupon]." J. App'x at 9 ¶¶ 14–15.

In May of 2018, Jusino taught a theology class on the sinfulness of racism, the centerpiece of which was a lecture titled "Racism as Sin." While the record below is somewhat muddy,[1] it appears that the "fallout" of the lecture entailed heated arguments between Jusino and Notre Dame students, parents, and administrators, Dist. Ct. Doc. No. 14 at 2–3, and ultimately resulted in Notre Dame's "suspend[ing]" Jusino "without pay" and "with intent to discharge" as of August 2018, J. App'x at 9, 11 ¶¶ 16, 26 (emphasis omitted).

In September of 2018, FCT informed Notre Dame that it "was instituting formal grievance arbitration procedures on [Jusino's] behalf" to challenge his termination as a tenured teacher. *Id.* at 8 ¶ 9. In connection with that grievance, Jusino "alleged to [FCT] that [he] had been explicitly suspended" (and ultimately "discharge[d]") by Notre Dame "for complaining about sex, race, and age discrimination against [him] by [Notre Dame], and [about] race discrimination by [Notre Dame] against one of its students." *Id.* at 9 ¶ 16. A month later, Jusino asserted the same factual allegations in a federal lawsuit against Notre Dame,

---

[1] *N.b.*, Jusino provides more detailed factual allegations regarding the circumstances leading up to his termination in the pro se complaint filed in his separate suit against Notre Dame, *see generally* Complaint, *Jusino v. Notre Dame Acad. High Sch.*, No. 18-cv-6027 (MKB) (E.D.N.Y. Oct. 29, 2018), ECF No. 1, which he has incorporated by reference into the operative complaint in *this* case.

bringing claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the NYSHRL, and the NYCHRL. *See* Complaint, *Jusino v. Notre Dame Acad. High Sch.*, No. 18-cv-6027 (MKB) (E.D.N.Y. Oct. 29, 2018), ECF No. 1. Shortly thereafter, Jusino informed the FCT of his lawsuit against Notre Dame and reiterated to the FCT his position that Notre Dame had breached the CBA by violating various employment-discrimination laws incorporated therein by reference.

The FCT, however, responded in a December 2018 email to Jusino that it "was not in favor of making any Title VII discrimination/retaliation claims on [his] behalf" at the upcoming union arbitration with Notre Dame. J. App'x at 10 ¶ 20. Likewise, the FCT's counsel declined to respond to Jusino's suggestion that the FCT might arbitrate the NYCHRL claim on his behalf. Between then and May 17, 2019, when it ultimately commenced formal union arbitration proceedings between Jusino and Notre Dame, the FCT repeatedly reiterated to Jusino that "we are not arbitrating your Title VII claims." *Id.* at 11 ¶ 24. Indeed, the FCT declined to present Jusino's discrimination claims in either its presentation of his grievances at the pre-hearing conference with the arbitrator in January 2019 or its opening statements at the arbitration hearing itself in May 2019.

7

At the close of the May 2019 initial arbitration hearing, Notre Dame and the FCT then agreed to adjourn the arbitration to November 2019. In the meantime, Jusino and Notre Dame settled their lawsuit after participating in the Eastern District of New York's pro se mediation program; as part of that settlement, Jusino voluntarily dismissed his discrimination and retaliation claims. *See* Settlement Letter, *Jusino*, No. 18-cv-6027 (E.D.N.Y. Aug. 21, 2019), ECF No. 28; Stipulated Order of Dismissal, *Jusino*, No. 18-cv-6027 (E.D.N.Y. Sept. 27, 2019), ECF No. 33.

B.    **Procedural History**

On November 12, 2019, Jusino commenced this action against the FCT in the Eastern District of New York. In his underlying pro se complaint, Jusino alleged that the FCT had "willful[ly] refus[ed] to investigate [his] Title VII discrimination/retaliation [claims] or any of [his] other [available discrimination claims against Notre Dame] under the CBA," and likewise "refus[ed] to . . . meaningfully assert" such claims on his behalf at the union arbitration proceedings with Notre Dame. J. App'x at 18–19 ¶¶ 62, 64, 66. Based on these allegations, Jusino claimed principally that the FCT had breached its duty of fair representation under the NLRA and LMRA. Based on the same allegations, Jusino also claimed that the FCT had discriminated against him in its own right, thereby

8

violating the provisions of the NYSHRL and NYCHRL that apply to "labor organizations." *See* N.Y. Exec. Law § 296(1)(e); N.Y.C. Admin. Code § 8-107(1)(c). For the duty-of-fair-representation claim, Jusino invoked the district court's federal-question and civil-rights jurisdiction under 28 U.S.C. §§ 1331 and 1343, and for the NYSHRL and NYCHRL claims, he invoked the district court's supplemental jurisdiction under 28 U.S.C. § 1367.

The FCT moved to dismiss Jusino's complaint in its entirety. As to Justino's federal duty-of-fair-representation claim, the FCT sought dismissal principally under Rule 12(b)(1), arguing that labor disputes involving parochial-school teachers are excluded from the NLRA's and LMRA's grants of federal subject-matter jurisdiction under *Catholic Bishop*. In the alternative, the FCT sought dismissal of the duty-of-fair-representation claim under Rule 12(b)(6), arguing that it was time-barred and/or that Jusino had failed to adequately plead the elements of such a claim. As to Jusino's NYSHRL and NYCHRL claims, the FCT argued that the district court should either find that it lacked supplemental jurisdiction under 28 U.S.C. § 1367(a) (in the event that the duty-of-fair-representation claim was dismissed for lack of subject-matter jurisdiction), or decline to exercise

supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) (in the event the duty-of-fair-representation claim was dismissed on Rule 12(b)(6) grounds).

The magistrate judge (Tiscione, *Mag. J.*) recommended dismissing Jusino's duty-of-fair-representation claim pursuant to Rule 12(b)(1), reasoning that Jusino had "failed [to] meet his burden [to] show that subject[-]matter jurisdiction exists" under *Catholic Bishop*. J. App'x at 33. In light of this recommendation, the magistrate judge did not reach either of FCT's alternative arguments for Rule 12(b)(6) dismissal, but he did recommend "declining to exercise supplemental jurisdiction [over,] and granting FCT's [m]otion [to dismiss,] Jusino's state[-] [and municipal-]law claims." *Id.* at 33–34. Jusino objected to the magistrate judge's report and recommendation with respect to the duty-of-fair-representation claim, but did not address the state- or municipal-law claims. The district court then adopted the report and recommendation "in its entirety," dismissed Jusino's federal duty-of-fair-representation claim with prejudice under Rule 12(b)(1), and dismissed his NYSHRL and NYCHRL claims "without prejudice to their repleading in a state court of appropriate jurisdiction." *Id.* at 35, 42.

Jusino timely appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal for lack of subject-matter jurisdiction, construing the complaint liberally and accepting all factual allegations in the complaint as true. *Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021). We may "affirm on any ground with support in the record," *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014), "including grounds upon which the district court did not rely," *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

## III. DISCUSSION

### A. Duty-of-Fair-Representation Claim

#### 1. The district court properly concluded that the NLRA and LMRA are inapplicable to Jusino's claim against his parochial-school teachers' union.

In *Catholic Bishop*, the Supreme Court held that the NLRA does not "bring teachers in church-operated schools within" its "cover[age]." 440 U.S. at 504, 507. The Court so held in the context of an administrative enforcement action brought by the National Labor Relations Board (the "NLRB") against two Roman Catholic dioceses, asserting unfair-labor-practices claims under the NLRA on behalf of teachers employed in schools operated by the dioceses. *See id.* at 492–95. We must now decide, as a matter of first impression, whether *Catholic Bishop* likewise

11

precludes a former parochial-school teacher's duty-of-fair-representation claim against his parochial-school teachers' union. We hold that it does.

An employee's duty-of-fair-representation claim against his labor union is derivative of – that is, "inextricably interdependent" with – his claim against his employer under section 301 of the LMRA. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *see also Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) ("To prevail on a hybrid [section] 301/duty[-]of[-]fair[-]representation claim, [a plaintiff] must demonstrate *both* (1) that [the employer] breached its collective bargaining agreement *and* (2) that [the union] breached its duty of fair representation." (emphasis added)). Thus, Jusino can only assert a viable duty-of-fair-representation claim against the FCT if he *also* has a viable section 301 claim against Notre Dame. But the holding of *Catholic Bishop* – again, that "teachers in church-operated schools" are not "covered by the [NLRA as amended by the LMRA]" – squarely forecloses any section 301 claim that Jusino might bring against Notre Dame. 440 U.S. at 504.

While the NLRA action at issue in *Catholic Bishop* was commenced by the NLRB on behalf of parochial-school teachers, rather than by parochial-school teachers on their own behalf, *see id.* at 494, that distinction is of no moment here.

12

In *Catholic Bishop*, the crux of the analysis was the canon of constitutional avoidance, i.e., the longstanding principle that acts of Congress "ought not be construed to violate the Constitution if any other possible construction remains available." *Id.* at 500 (citing *Murray v. The Charming Betsy*, 6 U.S (2 Cranch) 64, 118 (1804)). Recognizing "the critical and unique role of the teacher in fulfilling the mission of a church-operated school," the Supreme Court therefore reasoned that "constru[ing] the [NLRA] in a manner" that "covered" labor relations between parochial schools and their teachers would "call upon *the Court* to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses." *Id.* at 501, 504, 507 (emphasis added).

Critically, the Court drew no distinction between the "First Amendment problems" that would be created for "courts *or* agencies" called upon to apply the NLRA in ways that might "impinge upon the freedom of church authorities to shape and direct teaching in accord with the requirements of their religion." *Id.* at 496 (emphasis added; citation omitted). Indeed, even within the context of the administrative enforcement proceedings under review in *Catholic Bishop*, the Court focused on the constitutional "problems" posed for the NLRB administrative law judges ("ALJs") "called upon" to "*resolve*" claims involving parochial-school labor

13

relations – rather than for the NLRB officials *bringing* such claims. *Id.* at 496, 502 (emphasis added). That is, since NLRA claims brought on behalf of parochial-school teachers would "in many instances" prompt their parochial-school employers to "respond[] that their challenged actions were mandated by their religious creeds," the ALJs' "resolution" of such claims would "necessarily involve [their] inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission." *Id.* at 502–03. That reasoning applies with no less force where – as here – an Article III court (rather than an ALJ) is "called upon" to "resolve" an NLRA claim brought directly by a parochial-school teacher (rather than by the NLRB on behalf of such teachers). *Id.* at 502, 507.

Unable to distinguish *Catholic Bishop*, Jusino instead asserts that it is no longer good law. We disagree. Principally, Jusino argues that the "entire rationale" of *Catholic Bishop* "has been overruled" by the Supreme Court's decision in *Arbaugh v. Y&H Corp*, 546 U.S. 500 (2006). Jusino Br. at 16. But *Arbaugh* did no such thing. It said nothing about *Catholic Bishop*, the canon of constitutional avoidance, the NLRA, or its applicability to labor disputes involving parochial-school teachers. Rather, the Supreme Court in *Arbaugh* merely criticized a "genre"

14

of "[j]udicial opinions," including a few of its own, that had "erroneously conflated" subject-matter jurisdiction with the "merits issue" of "a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief." *Id.* at 511, 513 n.7 (citation omitted). The Court thus decreed that where judicial opinions "obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim," their "'drive-by jurisdictional rulings' . . . should be accorded 'no precedential effect.'" *Id.* (first quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000); then quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)).

Clearly, *Arbaugh* bears upon *Catholic Bishop* only in a limited way. To the extent that *Catholic Bishop* purported to answer "[w]hether teachers in schools operated by a church . . . are within the *jurisdiction* granted by the [NLRA]," 440 U.S. at 491 (emphasis added), it might be argued to have announced a "drive-by *jurisdictional* ruling[]" of the sort that *Arbaugh* cautions us to discount, 546 U.S. at 511 (emphasis added; citation omitted). But that argument would merely go to "whether the dismissal should [have] be[en] for lack of subject matter jurisdiction

15

or for failure to state a claim," *id.* (citation omitted) – a question we will address in just a moment, *see infra* Section III.A.2 – not whether *Catholic Bishop* requires dismissal of Jusino's duty-of-fair-representation claim *at all*. It certainly does not provide grounds to suggest that the "entire rationale" of *Catholic Bishop* was "overruled," or even called into question, by *Arbaugh*. Jusino Br. at 16.

*Catholic Bishop* also remains good law notwithstanding its reliance, *see* 440 U.S. at 496, 501–03, on *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which was overruled by the Supreme Court – depending on whom you ask – either "long ago," *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427 (2022), or about two weeks after Jusino's appeal was submitted for our decision, *see id.* at 2434 (Sotomayor, J., dissenting) ("*Today's* [June 27, 2022] decision . . . . overrules *Lemon v. Kurtzman* . . . ." (emphasis added)). But regardless of whether *Kennedy* actively overruled *Lemon* or simply recognized that *Lemon* was already a dead letter, one thing it indisputably did *not* do was overrule – or even mention – *Catholic Bishop*. Thus, unless and until the Supreme Court sees fit to overrule *Catholic Bishop* directly, it remains binding on this Court. *See, e.g.*, *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("It is [the Supreme] Court's prerogative alone to overrule one of its precedents . . . . [Its] decisions remain binding precedent until [it] see[s] fit to

16

reconsider them, regardless of whether [its] subsequent cases have raised doubts about their continuing vitality.") (citations and alteration omitted).

Accordingly, we agree with the district court that *Catholic Bishop* was applicable here and required the dismissal of Jusino's duty-of-fair-representation claim against the FCT.

**2.    The inapplicability of the NLRA and LMRA to parochial-school teachers' duty-of-fair-representation claims created a defect in Jusino's pleading, not in the federal courts' subject-matter jurisdiction.**

While the district court correctly stated that dismissal of this action "is compelled by . . . *Catholic Bishop*," it erred in stating that *Catholic Bishop*'s effect is to "deprive[] the [federal] [c]ourt[s] of [subject-matter] jurisdiction" over this case. J. App'x at 39 (citation omitted). Rather, the application of *Catholic Bishop* in this case goes to Jusino's *failure to state a claim*. It was therefore improper for the district court "to dismiss pursuant to Rule 12(b)(1)," as opposed to Rule 12(b)(6). *Id.* at 42.

Such confusion is understandable, given *Catholic Bishop*'s repeated references to "jurisdiction." *See* 440 U.S. at 491, 493–502, 504–06, 507. But the word "'[j]urisdiction,' it has been observed, 'is a word of many, too many meanings,' and it has been 'commonplace for the term to be used' imprecisely to refer to statutory limitations that are not strictly jurisdictional." *Green*, 16 F.4th at 1076

17

(quoting *Steel Co.*, 523 U.S at 90).  Thus, as alluded to above, the Supreme Court has repeatedly instructed lower courts over the past two decades to "be especially careful to distinguish 'between two sometimes confused or conflated concepts: federal-court "subject-matter" jurisdiction over a controversy; and the essential ingredients of a federal claim for relief.'"  *Id.* (quoting *Arbaugh*, 546 U.S. at 503); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("The question whether a federal statute creates a claim for relief is not jurisdictional." (quoting *Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 365 (1994))).  To that end, the Supreme Court has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional":  courts are to "inquire whether Congress has 'clearly stated' that the rule is jurisdictional," and "absent such a clear statement, . . . the restriction [is] nonjurisdictional in character."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Arbaugh*, 546 U.S. at 515–16) (alteration omitted).

Here, Congress has never clearly stated a rule that labor claims involving parochial schools are excepted from any of the NLRA's jurisdiction-conferring provisions (such as the LMRA).  The NLRA's definitions do not explicitly exempt parochial schools or labor unions representing parochial-school teachers from the

18

statute's substantive provisions. *See* 29 U.S.C. § 152. Even if they did – as they explicitly do, e.g., for "State[s] or political subdivision[s] thereof," *id.* § 152(2) – that would not exempt the parochial school or labor organization representing teachers employed at a parochial school from subject-matter jurisdiction, *see Green*, 16 F.4th at 1075–76 (explaining that although section 152's definition of "employer" exempts a "state or a political subdivision of a state" from coverage by substantive provisions concerning "employers," that does not limit subject-matter jurisdiction). Thus, insofar as *Catholic Bishop* might be read to have found a lack of subject-matter jurisdiction over NLRA claims involving parochial schools (or their teachers, or those teachers' labor unions), that was a "drive-by jurisdictional ruling" that has "no precedential effect." *Id.* at 1076 n.1 (quoting *Steel Co.*, 523 U.S. at 91). Rather, we interpret *Catholic Bishop* to have spoken only to the "question of whether the particular plaintiff 'has a cause of action under the statute,'" which "does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case." *Am. Psychiatric Ass'n*, 821 F.3d at 359 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014)) (emphasis in original; alterations omitted).

Confusion on this point has, if anything, been compounded by the fact that the particular constitutional principle at the heart of *Catholic Bishop*'s reading of the NLRA – the "ministerial exception," *see generally Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012)[2] – has itself often been characterized in terms that may *sound* jurisdictional.[3]  Indeed, prior to *Hosanna-Tabor*, several circuits (including our own) had expressly held that the ministerial exception *is* jurisdictional.  *See, e.g., Rweyemamu v. Cote*, 520 F.3d 198, 209 (2d Cir. 2008) (affirming dismissal, for lack of subject-matter jurisdiction, of a Roman Catholic priest's Title VII action against his diocese for allegedly failing to promote him on the basis of race); *see also Hosanna-Tabor*, 565 U.S. at 195 n.4 (collecting cases

---

[2] The ministerial exception "precludes application of [labor and employment-discrimination] legislation to claims concerning the employment relationship between a religious institution and its ministers."  *Hosanna-Tabor*, 565 U.S. at 188.  The Supreme Court has found it "apparent that [parochial-school teachers] qualify for the exemption . . . recognized in *Hosanna-Tabor* [where their job responsibilities include] perform[ing] vital religious duties" such as teaching theology.  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2066 (2020).

[3] *See, e.g., Watson v. Jones*, 80 U.S. (13 Wall) 679, 709, 727 (1871) (questioning "the *power* of the civil courts" to decide cases involving "questions of . . . ecclesiastical rule" (emphasis added)), *cited in Hosanna-Tabor*, 565 U.S. at 185; *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 114–16 (1952) (using similar language), *cited in Hosanna-Tabor*, 565 U.S. at 186; *see also McCarthy v. Fuller*, 714 F.3d 971, 975 (7th Cir. 2013) (characterizing the ministerial exception as providing "immunity from the travails of a trial and not just from an adverse judgment"); *Dayner v. Archdiocese of Hartford*, 301 Conn. 759, 769 (2011) ("When the ministerial exception applies, it provides the defendant with immunity from suit [as opposed to mere immunity from liability] and deprives the court of subject matter jurisdiction.").

on both sides of this former circuit split).  But in *Hosanna-Tabor*, the Supreme Court unequivocally rejected that view, holding "that the [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar[,] . . . . because [it concerns] 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear the case.'" 565 U.S. at 195 n.4 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)) (alteration omitted).

Thus, while the holding of *Catholic Bishop* does extend to preclude Jusino's duty-of-fair-representation claim against the FCT, it speaks to "the absence of a valid . . . cause of action" on Jusino's part – not an absence of "subject-matter jurisdiction" on the district court's part.  *Lexmark*, 572 U.S. at 128 n.4 (citation omitted).  Jusino's complaint therefore "fails to state a claim for a violation of the statute and should have been dismissed pursuant to Rule 12(b)(6)." *Green*, 16 F.4th at 1075.

**3.     The concurrence misapprehends our precedent and offers no basis for avoiding the straightforward application of *Catholic Bishop* to Jusino's claims.**

The concurrence suggests that instead of reaching the merits of Jusino's failure to state a claim, we should decide this appeal on the ground that "all of

[Jusino's] claims against [the FCT] are time-barred." Concurrence at 1. We respectfully disagree. For starters, the issue of timeliness was never addressed below, in either the magistrate judge's report and recommendation or the district court's final order. And while we may be "*free* to affirm on any ground that finds support in the record, even if it was not the ground upon which the district court relied," we have made clear that "we *prefer* not to speculate in the first instance as to" issues not passed upon below. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 160 n.6 (2d Cir. 2017) (emphasis added; citation and alterations omitted). Indeed, it is a fundamental principle of "our adversarial system of adjudication" that "courts normally decide only questions presented by the parties," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citation and alteration omitted), and here, neither party addressed the timeliness of Jusino's claims in its appellate briefs.

The concurrence also contends that our merits analysis "require[s] some new law and some new applications of old law," and that it is "[in]advisable" as a "general matter" to address novel legal questions in "pro se case[s]" such as this. Concurrence at 1 (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 n.2 (2d Cir. 2000)). To be sure, there may often be sound reasons to avoid

resolving novel legal questions in cases where we have briefing only from a pro se litigant. In *Fitzgerald*, however, the case upon which the concurrence relies for this contention, we did not suggest such a "general" policy against resolving novel legal questions simply because they happen to be raised in cases involving pro se litigants. To the contrary, we have published many precedential opinions – something courts typically do precisely for the purpose of "establish[ing] a new, or chang[ing] an existing, rule of law," *Hughes v. Rowe*, 449 U.S. 5, 7 n.3 (1980) (citation omitted) – in cases involving pro se litigants, *see, e.g.*, *Schlosser v. Kwak*, 16 F.4th 1078, 1079, 1081–82 (2d Cir. 2021) (resolving, in such a case, a question of first impression for our Circuit); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 242, 244 (2d Cir. 2020) (same); *United States v. Pilcher*, 950 F.3d 39, 40–41 (2d Cir. 2020) (same). All we said in *Fitzgerald* was that we did not "need [to] decide" whether "dismissals under [a then-recently amended statute] are reviewed de novo or for abuse of discretion" – a question that was "no longer clear" in light of said amendments – "because the [d]istrict [c]ourt's decision" in that case would "easily pass[] muster under" either standard. 221 F.3d at 364 n.2. In other words, we simply refrained from announcing unnecessary dicta on a substantively difficult question of law.

23

Here, by contrast, we find nothing substantively difficult or "[un]clear," *id.*, in the merits question that the concurrence urges us to avoid. Our answer to that question is dictated by a simple syllogism of labor law: because the validity of Jusino's duty-of-fair-representation claim against the FCT is "inextricably []dependent" on his having a valid underlying LMRA claim against Notre Dame, *DelCostello*, 462 U.S. at 164, and *Catholic Bishop* unambiguously precludes him from asserting such a claim against Notre Dame, *see* 440 U.S. at 504, 507, his duty-of-fair-representation claim against the FCT must fail. That conclusion is hardly dicta, *cf. Fitzgerald*, 221 F.3d at 364 n.2; it is dispositive of the federal claim at the heart of Jusino's case. Moreover, Jusino's pro se briefs are intelligently composed and present a colorable – though ultimately unavailing – argument on the merits. Under these circumstances, we think it wiser and fairer to resolve the merits issue as framed by the parties than to decide the appeal on technical grounds that were neither passed on below nor briefed here.

4. **Affirmance is proper, notwithstanding the district court's mischaracterization of a dismissal for failure to state a claim as a dismissal for lack of subject-matter jurisdiction.**

As explained above, *see supra* Section III.A.2, we conclude that while the holding of *Catholic Bishop* does extend to preclude Jusino's duty-of-fair-

24

representation claim against the FCT, it speaks to "the absence of a valid . . . cause of action" on Jusino's part – not an absence of "subject-matter jurisdiction" on the district court's part. *Lexmark*, 572 U.S. at 128 n.4 (citation omitted). In other words, the district court erred in casting its judgment as a dismissal under Rule 12(b)(1); because the fatal flaw of Jusino's claim was its "fail[ure] to state a claim for a violation of the" NLRA as amended by the LMRA, it "should have been dismissed pursuant to Rule 12(b)(6)." *Green*, 16 F.4th at 1075.

This conclusion prompts an issue of appellate remedies that might otherwise be quite difficult, if not for the fact that our Court squarely answered it just last Fall in *Green*. There, as here, the district court had dismissed with prejudice, for putative lack of jurisdiction, a duty-of-fair-representation claim brought by a plaintiff who lacked a valid cause of action under the NLRA and LMRA. *See Green*, 16 F.4th at 1074. We found error both insofar as "dismissals for lack of subject[-]matter jurisdiction 'must be without prejudice, rather than with prejudice,'" *and* insofar as "the claim should have been dismissed for failure to state a claim rather than for lack of subject matter jurisdiction." *Id.* (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)). But rather than vacating the district court's improper Rule 12(b)(1) dismissal with prejudice and remanding

25

with instructions to re-dismiss with prejudice under Rule 12(b)(6), we found it appropriate to simply "affirm the district court's dismissal with prejudice." *Id.*

Thus, following *Green*, we affirm the district court's dismissal of Jusino's federal claim with prejudice, in light of our holding that such dismissal should have been pursuant to Rule 12(b)(6) rather than 12(b)(1). That the district court did not itself dismiss Jusino's duty-of-fair-representation claim for failure to state a claim is no obstacle to this disposition, since we may "affirm on any ground with support in the record," *Cox*, 760 F.3d at 145, "including grounds upon which the district court did not rely," *Leon*, 988 F.2d at 308.

## B.    State- and Municipal-Law Claims

That leaves Jusino's claims under the laws of New York State and New York City, which the district court "dismissed without prejudice to their repleading in a state court of appropriate jurisdiction." J. App'x at 42. Jusino has forfeited any challenge to such dismissal twice over. *See United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022) ("Forfeiture, a . . . 'failure to make the timely assertion of a right' when procedurally appropriate, allows a court . . . to disregard an argument at its discretion (in civil cases) . . . ." (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))). First, after the magistrate judge recommended "declining to exercise

26

supplemental jurisdiction [over] Jusino's state[-] [and municipal-]law claims," J. App'x at 33–34, Jusino's "failure to object . . . to [that portion of the] magistrate's report operate[d] as a [forfeiture] of any further judicial review of the magistrate's decision," *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995) (internal quotation marks omitted). Second, Jusino does not challenge the dismissal of his state- and municipal-law claims anywhere in his appellate briefs. *See, e.g.*, *Weinstein v. Albright*, 261 F.3d 127, 133 n.3 (2d Cir. 2001) (applying our general rule that where a district court's ruling is not challenged in an appellant's briefs on appeal, we consider any appeal of that ruling to be forfeited). In any event, the district court's dismissal of such claims was affirmatively proper. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[I]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citing 28 U.S.C. § 1367(c)(3))); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims . . . without prejudice . . . .").

27

## IV. CONCLUSION

For the foregoing reasons, we conclude that Jusino, as a parochial-school teacher, lacks a cause of action under the NLRA and LMRA for FCT's alleged breach of its duty of fair representation; that his lack of a valid cause of action under the NLRA and LMRA resulted in his failing to state a claim but did not deprive the federal courts of subject-matter jurisdiction; that the district court's dismissal with prejudice under Rule 12(b)(1) may be affirmed on the alternative ground that such a dismissal would have been proper under Rule 12(b)(6); and that Jusino has forfeited any challenge to the district court's decision to decline jurisdiction over his state- and municipal-law claims in light of its dismissal of his federal claim. Accordingly, we **AFFIRM** the district court's dismissal of Jusino's federal claims with prejudice and its dismissal of his state- and municipal-law claims without prejudice to their repleading in a state court of appropriate jurisdiction.

IN THE

# United States Court of Appeals

# For the Second Circuit

_____

CALABRESI, *Circuit Judge*, concurring:

The majority opinion treats a series of federal issues that require some new law and some new applications of old law to the appeal in this case. But none of these issues need to be reached because all of plaintiff's claims against defendant union are time-barred. Plaintiff is *pro se*, and, as a general matter, it is advisable, when a *pro se* case can be decided in way that makes no new law, to decide it on the basis. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 n.2 (2d Cir. 2000) (per curiam) (declining to address a novel legal question raised by a *pro se* litigant where not necessary to adjudicate the claim).

As the majority states, the timelines questions have not been addressed by the parties and, other things being equal we prefer not to decide what has not been argued. Maj. Op. at 22. But as the majority recognizes, we are free to do so. *Id.* And we have done so when the record is sufficiently clear on the issue.

As the majority also states, we do make new law in *pro se* cases, and do so regularly when there is no other way of deciding a case. Maj. Op. at 23. We are free to do so even when there is another way of deciding the case, but it is preferable to avoid it if the "new law" is in any way problematic. The case I cite above is just one of many suggesting this.

The question then becomes is the "new law" in this case so non-problematic that it is preferable to make it, even though plaintiff is *pro se*, or does it raise questions so that it is better to decide the case on a ground – timelines- that is on the record but was not argued. The majority clearly believes the former. I believe that, at this time, <u>any</u> new law touching on the intersection between religious rights and freedom from discrimination – both are fundamental – is best made extremely cautiously. And for that reason, I respectfully concur separately.

I join the majority's treatment of plaintiff's state law claims in full.