*835 Hinesburg Rd., LLC v. City of S. Burlington*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand twenty-three.

PRESENT:
> AMALYA L. KEARSE,
> SUSAN L. CARNEY,
> MYRNA PÉREZ,
> > *Circuit Judges.*

─────────────────────────────────────────

835 HINESBURG ROAD, LLC,

> *Plaintiff-Appellant,*

> v.                                                          No. 23-218

CITY OF SOUTH BURLINGTON, SOUTH
BURLINGTON CITY COUNCIL, MEAGHAN EMERY,
TIMOTHY BARRITT, HELEN RIEHLE,

> *Defendants-Appellees.*

─────────────────────────────────────────

FOR APPELLANT:                          KATHRYN D. VALOIS, Pacific Legal
                                        Foundation, Palm Beach Gardens, FL
                                        (Christopher M. Kieser, Pacific Legal
                                        Foundation, Sacramento, CA; Matthew B.
                                        Byrne, Gravel & Shea PC, Burlington, VT,
                                        *on the brief*).

FOR APPELLEES:                                    PIETRO J. LYNN, Lynn, Lynn, Blackman &
                                                  Manitsky, P.C., Burlington, VT.

Appeal from a judgment of the United States District Court for the District of
Vermont (Crawford, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED** that the judgment entered on January 27, 2023, is
**AFFIRMED**.

Plaintiff-Appellant 835 Hinesburg Road, LLC ("835 Hinesburg") appeals from a
judgment of the United States District Court for the District of Vermont (Crawford, *Chief
Judge*) dismissing as unripe its regulatory takings and due process claims against the City of
South Burlington (the "City"), South Burlington City Council (the "City Council"), and City
Councilors Meaghan Emery, Timothy Barritt, and Helen Riehle. Its claims arise from zoning
changes covering its 113.8-acre parcel of undeveloped land within City limits (the
"Property"). We assume the parties' familiarity with the underlying facts, procedural history,
and arguments on appeal, to which we refer only as necessary to explain our decision to
affirm.

In November 2018, the City Council adopted Interim Bylaws that required it to
prioritize undeveloped open spaces for conservation and to assess whether and how to
amend the existing Land Development Regulations (the "LDRs"). The Interim Bylaws
facially prohibited new planned unit developments, but also empowered the City Council in
its discretion to "authorize the issuance of permits" for development. App'x at 51–52. In
March 2020, a City Council committee identified twenty-five "highest priority parcels for
conservation," *id.* at 97, to be designated as "Habitat Blocks." These parcels include a
portion—around 38%—of the Property. Meanwhile, the City Council continued its efforts
to draft amendments to the LDRs.

In August 2021, while the Interim Bylaws were still in effect and before the City
Council finalized any proposed amendments to the LDRs, 835 Hinesburg submitted a
"sketch plan" application (the "sketch plan" or "sketch plan application") to the City

Council, requesting a permit for commercial development of the Property under the Interim Bylaws. In November 2021, the City Council met regarding the proposed amendments to the LDRs and voted to authorize hearings on those changes. At the same meeting, the City Council denied 835 Hinesburg's sketch plan application. In its written decision, the City Council noted that the City had identified a portion of the Property as a "Habitat Block," which—if the City Council were to adopt the proposed amendments to the LDRs—could be subject to a ban on development. The City Council explained that, because it "ha[d] not completed the preparation of these amendments, the City Council d[id] not yet know for certain the standards that will apply to development of the subject [P]roperty[.]" *Id.* at 34. It further advised that, although its review reflected "a minimal assessment of the proposed development under the draft LDR amendments, . . . it is very likely that" the proposed development "would not comply with the [draft] LDR amendments." *Id.* The City Council also pointed out that the sketch plan was missing important information relevant to an eventual decision. The sketch plan failed to note the precise location of the Habitat Block on the Property, the presence or absence of any Class III wetlands on the Property, and the impact of the proposed development on any 500-year floodplain areas on the Property. "Based on these unknowns and an initial review of the application of the draft amendments [to the LDRs]," the City Council concluded, "the proposed development will or could be contrary to the amendments to the [LDRs] that the City adopts." *Id.* at 35.

In December 2021, the South Burlington Development Review Board (the "DRB") also reviewed 835 Hinesburg's sketch plan. Without rendering a decision on the sketch plan, the DRB elected to "conclude the Sketch Plan meeting." *Id.* at 42. It explained that "significant modifications to the [sketch] plan are necessary in order to meet the draft regulations, which would require re-warning."[1] *Id.* The DRB invited 835 Hinesburg to "return with a revised sketch under the Draft LDR[s]," *id.*, but 835 Hinesburg never did so.

---

[1] Vermont law mandates "a warned public hearing" for all development review applications submitted to the appropriate municipal entity, subject to specific notice requirements. 24 V.S.A. § 4464.

On February 7, 2022, by a three-to-two vote, the City Council adopted amendments to the LDRs (the "Amended LDRs"). The Amended LDRs included, among other things, a requirement that "all lands within a Habitat Block" be "left in an undisturbed, naturally vegetated condition," subject to certain exemptions and potential modifications. Amended LDRs § 12.04(F)(1). 835 Hinesburg did not submit an application for development of the Property under the Amended LDRs. Instead, on February 24, 2022, it filed this suit.

## I.

835 Hinesburg first challenges the District Court's determination that its Fifth Amendment regulatory takings claim is unripe and therefore fails to satisfy Article III's "case or controversy" requirement, *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). The District Court concluded that 835 Hinesburg was "jumping the gun," reasoning that neither the City Council nor the DRB has "ruled in any comprehensive way on [835 Hinesburg]'s proposal under the LDRs now in effect." *835 Hinesburg Rd., LLC v. City of S. Burlington*, No. 22-cv-58, 2023 WL 2169306, at *9 (D. Vt. Jan. 27, 2023). The District Court also observed that the Amended LDRs "indicate that the DRB may exercise discretionary authority in locating and enforcing the 'Habitat Blocks' on undeveloped parcels." *Id.* Upon due consideration, we agree with the District Court that 835 Hinesburg's claim is unripe.

The Supreme Court has instructed that a regulatory takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled in part on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). To meet the final-decision requirement, a plaintiff must show that "the government is committed to a position." *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021). In the land use context, we have emphasized that the need for finality is "especially pronounced," in order to avoid courts' premature involvement in essentially local disputes. *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022). Indeed, the final-decision requirement "evinces the

4

judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d at 348 (citations omitted).

At the same time, the final-decision requirement is "relatively modest," and "nothing more than *de facto* finality is necessary" to satisfy Article III. *Pakdel*, 141 S. Ct. at 2230. And the requirement "is not mechanically applied." *Murphy*, 402 F.3d at 349. Property owners may be excused from pursuing applications for a variance, for example, "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied," i.e., when making such applications would be futile. *Id.* (citations omitted).

Here, the City Council has not reached a final decision on any specific proposed development of the Property by 835 Hinesburg. To begin, 835 Hinesburg concedes that it has not submitted an application under the Amended LDRs; the City has thus not rendered a final decision on any submission made by 835 Hinesburg under the applicable regulatory regime. And the application that 835 Hinesburg *did* file—the sketch plan—was both preliminary and incomplete. Because the Amended LDRs were still in draft form, and the City Council did "not yet know for certain" how the proposed Amended LDRs would apply to the Property, the City Council could conduct only a "minimal" assessment of 835 Hinesburg's sketch plan, it explained. App'x at 34. Moreover, the sketch plan lacked information that the City Council advised that it needed to conduct a meaningful evaluation of 835 Hinesburg's preliminary proposal, such as information about wetland buffers, floodplains, and the precise location of the Habitat Block relative to the proposed development. In sum, the City Council's November 2021 decision was not a "final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. at 186.[2]

835 Hinesburg attempts to sidestep the final-decision requirement, contending that to submit an application under the Amended LDRs would have been "futile." Appellant's Br.

---

[2] Consistent with our understanding that the City Council's November 2021 decision was not final, the DRB subsequently invited 835 Hinesburg to "return with a revised sketch under the Draft LDR[s]." App'x at 42.

at 22. It accuses the District Court of "speculat[ing]" that "835 Hinesburg may get what it wants through a land exchange or boundary adjustment reached through agreement with the zoning authority" and asserts that the Amended LDRs "leave no room for the City to consider, or issue, a development permit." *Id.* at 13–14 (citation omitted). But these assertions are merely 835 Hinesburg's predictions regarding the City's final position on the application of the Amended LDRs to the Property. As the District Court commented, the Habitat Block located within the Property *may* preclude any commercially viable development, "[b]ut that is just it—the court does not yet know." 2023 WL 2169306, at *9.

Contrary to 835 Hinesburg's assertions, the Amended LDRs offer the City several options to shape how it applies the regulations to a given parcel, whether under the provisions governing Habitat Blocks, Amended LDRs § 12.04(D)(1)–(3); wetlands, *id.* § 12.06(D)(1), (F); or planned unit developments, *id.* §§ 15.C.04(C)(3), 15.C.06(G)(2). For example, on certain conditions, 835 Hinesburg may apply to exchange a portion of a Habitat Block on the Property for an equal amount of contiguous land. *Id.* § 12.04(D)(3). Because 835 Hinesburg has not yet submitted a complete application under the Amended LDRs—let alone a request for a modification—the City has not been in a position to render "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986).

For all these reasons, at this point, we simply do not "know[] how far the regulation goes." *Id.* Accordingly, the District Court properly dismissed 835 Hinesburg's regulatory takings claim as unripe.

## II.

835 Hinesburg also argues that the District Court erred by dismissing its substantive due process claim. It asserts that City Councilor Emery's allegedly conflicted vote to adopt the Amended LDRs violated its due process right to an unbiased determination on the general zoning regime by a neutral municipal decisionmaker. Relying primarily on *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84 (2d Cir. 1992), the District Court rejected this claim

6

and applied the *Williamson County* final-decision requirement to bar 835 Hinesburg's due process claim in addition to its takings claim.

In the past, we have applied the final-decision requirement "to land use disputes implicating more than just Fifth Amendment takings claims," *Murphy*, 402 F.3d at 349–50, including to substantive due process claims stemming from a zoning decision. In *Southview Associates*, we held that the plaintiff's "substantive due process claim premised on arbitrary and capricious government conduct" in denying a permit for development was subject to the *Williamson County* final-decision requirement. 980 F.2d at 96–99. More recently, in *Kurtz v. Verizon New York, Inc.*, we explained that applying the *Williamson County* test to due process claims "arising from the same nucleus of facts as a takings claim" serves to "prevent[] evasion of the ripeness test by artful pleading of a takings claim as a due process claim." 758 F.3d 506, 515–16 (2d Cir. 2014).

835 Hinesburg attempts to distinguish its due process claim from that asserted in *Southview Associates* by contending that its own challenge is to the very enactment of the Amended LDRs, not to the application of the Amended LDRs to the Property. It argues that its due process claim ripened when Emery—who 835 Hinesburg alleges is biased simply due to her employment as a professor at the University of Vermont, a large landowner in the City—voted on and the City Council enacted the Amended LDRs. In support of its argument that Emery's alleged bias supports a constitutionally cognizable claim, 835 Hinesburg relies primarily on *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

We are not persuaded. Even accepting *arguendo* 835 Hinesburg's characterization of its claim, the claim fails because 835 Hinesburg does not plausibly allege that "the probability of actual bias" on Emery's part was "too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 872 (citation omitted).[3] *Caperton* involved matters of *judicial* disqualification and an individual's right to a fair trial: There, the Supreme Court found a due process violation when a justice of West Virginia's highest court denied a recusal motion, on the basis that he

---

[3] "We may affirm on any ground with support in the record, . . . including grounds upon which the district court did not rely." *Jusino v. Fed'n of Catholic Teachers, Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (citations omitted).

had received "an extraordinary amount" in campaign contributions from the principal officer of one of the parties in the case—"an extraordinary situation where the Constitution requires recusal." *Id.* at 872–73, 887. We have nothing like that situation here. 835 Hinesburg's sole allegations regarding Emery's alleged bias are that she "struggled under heavy conflicts of interest that violated the City of South Burlington's 'Conflict of Interest and Ethics Policy,'" and that her "employer, the University of Vermont, had a direct financial interest in the outcome of the consideration of the [LDRs]." Compl. ¶¶ 2, 25. These conclusory assertions, without more, do not plausibly suggest that Emery's risk of actual bias was "sufficiently substantial" that her involvement "must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton*, 556 U.S. at 885 (citation omitted); *cf. id.* at 884 ("Not every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal, but this is an exceptional case." (citations omitted)). Because 835 Hinesburg's perfunctory allegations fail to render plausible its assertion that Emery's risk of bias in casting her vote as a member of the City Council worked a constitutional harm, we identify no error in the District Court's dismissal of this substantive due process claim.

* * *

We have considered 835 Hinesburg's remaining arguments and conclude that they are without merit. Accordingly, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

8