ELISABETH MOORE et al., Appellants, and UNITED UNIVERSITY PROFESSIONS, INC., Intervenor-Plaintiff, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, August 4, 1977

*Manly Fleischmann* and *Walter J. Relihan, Jr.,* for appellants.

*Bernard F. Ashe* for intervenor-plaintiff.

*Robert D. Stone (Donald O. Meserve* of counsel), for respondents.

MIKOLL, J. Appellants are the Chancellor and Trustees of the State University of New York (SUNY) and several professors and doctoral students in the history and English departments of the State University of New York at Albany. These appellants commenced an action against the New York State Board of Regents and the Commissioner of Education, for a declaratory judgment declaring, *inter alia,* that the trustees are responsible for standards and regulations of SUNY programs, subject only to the master plan approved by the Regents; that SUNY academic programs may not be terminated by the Regents or the commissioner, except by amendment of the master plan, which has not been done as to SUNY at Albany English and history Ph.D. programs; and that the directives of the commissioner terminating the SUNY at Albany English and history Ph.D. programs are in excess of the lawful powers of the commissioner and are null and void.

Following cross motions for summary judgment, the intervention of the United University Professions, Inc., as plaintiff and an *amicus curiae* brief filed by the Commissioner of Independent Colleges and Universities, Special Term entered judgment in favor of the defendants declaring the rights of the parties and enjoining the Trustees and Chancellor from offering the SUNY at Albany English and history Ph.D. programs.

The intervenor-plaintiff did not appeal from this judgment. Special Term held that insofar as appellants' complaint requested article 78 relief reviewing the determination of the commissioner as to the history Ph.D. program on the ground such determination was arbitrary and an abuse of discretion, it was time-barred (CPLR 217). This ruling is not contested on appeal.

In 1972, a Regents Commission on Doctoral Education was established. In August, 1973, the Regents issued a statement based on the commission's report and the response of the academic community to that report known as Position Paper 19. This statement recommended a systematic evaluation and rating by the commissioner of all doctoral programs in the State for the purpose of maintaining programs that meet standards of high quality and clear need and to improve or phase out those not meeting high standards. All history and English Ph.D. programs in the State were then evaluated.

Of the 12 history Ph.D. programs reviewed and evaluated (there were only 12 in the State), it was recommended that two be discontinued; that four be provisionally accepted to be reviewed again in three years; that two be limited to awarding degrees in certain fields of history; that four be authorized to award the Ph.D. in history without limitation.

The History Program Evaluation Committee recommended that the history Ph.D. program at SUNY at Albany be discontinued for the reasons that the faculty was not highly productive or prominent, with only one professor as a leading authority in a broad field of history, and the doctoral population (the smallest in the State) was not of sufficient strength and breadth for meaningful out-of-class learning.

Similarly, the committee which evaluated the English Ph.D. program at SUNY at Albany concluded that the doctoral program in English at that institution did not meet Ph.D. standards at the time and had little chance of meeting them in the foreseeable future. SUNY at Albany protested both committee findings. Notwithstanding these protests and those

of the SUNY Trustees, the commissioner refused to reregister either the English or history Ph.D. programs at SUNY at Albany when they expired as of September 1, 1975 (except for currently enrolled students).

Appellants' principal contention is that the Regents and the commissioner have no legal power to terminate academic programs at SUNY. We disagree.

The University of the State of New York ("the university") is a corporation created by New York State in 1784 and includes all secondary and higher education institutions in the State, and certain other libraries, museums, institutions, schools, organizations and agencies for education (NY Const, art XI, § 2; Education Law, §§ 201, 214). The Regents governs the university (Education Law, § 202). The Commissioner of Education is the chief executive officer of the Regents (Education Law, §§ 301, 305). SUNY is a public corporation which consists of the State University centers and colleges (Education Law, § 352). SUNY at Albany is a university center within SUNY.

Section 207 of the Education Law gives the Regents broad power to determine the State's educational policies: to "establish rules for carrying into effect the laws and policies of the state, relating to education, and the functions, powers, duties and trusts conferred or charged upon the university and the education department". Section 305 of the Education Law gives the commissioner general supervision over institutions in the university (subd 2) and such further powers and duties as assigned to him by the Regents (subd 18).

The Regents have given the commissioner specific authority to establish rules governing registration of courses (8 NYCRR 13.1). The rules of the commissioner require that all degree programs in higher education be registered with the commissioner (8 NYCRR 52.1).

Appellants argue that under authority of sections 237 and 355 of the Education Law, and chapter 388 of the Laws of 1961, the power of the Regents, and thence the commissioner, over SUNY is limited to approval of the SUNY master plan and that the only way a SUNY program may be terminated is by amendment of the master plan.

It is worthy of note in this regard that in the 1972 master plan, the Regents recommended that guidelines for doctoral programs be established which would embrace the principle that New York institutions offer programs only where they

have "the interest, strength and resources to sustain high quality offerings". Thus, Position Paper 19 and the refusal to reregister the two doctoral programs at SUNY at Albany would seem to be consistent with the master plan.

It is clear from a reading of the pertinent statutes that the Regents and the commissioner have the power and authority to refuse to register or reregister academic programs offered in the colleges and universities of the State.

The master plan legislation indicates that its purpose is not to restrict the over-all authority vested in the Regents for the supervision and control of the quality of education in the State, but rather, as a means to aid in that purpose through placing responsibility for operational and managerial performance in those at a level best able to cope with such responsibility while at the same time establishing a co-ordinated system to meet the future educational needs on all levels of those involved. Sections 237 and 355 of the Education Law do not replace the authority of the Regents as to SUNY in matters of educational quality. They are supplemental to the over-all powers vested in the Regents, at least, in matters of academic quality.

This statutory interpretation is reinforced by the fact that, as pointed out in the brief of the *amicus curiae* (submitted by the Commission on Independent Colleges and Universities), since 1910 the Regents have registered programs and have conducted such registration through the commissioner. A long-continued course of action by those administering a statute is entitled to great weight (McKinney's Cons Laws of NY, Book 1, Statutes, § 129). The Regents have a long history of supervision of the quality of colleges and degrees. Section 224 of the Education Law, which deals with prohibitions against diplomas, degrees and courses not approved by the Regents, reaffirms this authority.

Appellants further argue that section 207 does not operate to grant the Regents the power to license specific academic programs in a regionally accredited college or university. Section 207 clearly pertains to all parts of the educational system of the State. Neither is section 207 deficient because it does not specifically grant the Regents power to require the registration of degree programs. A broad grant of authority must necessarily include those powers which are fairly within the bounds of the legislative grant. Such contentions lack merit.

The appellants next argue that neither doctoral program could be terminated because it did not violate any statute, regulation or master plan. However, the programs did violate 8 NYCRR 52.1 (a) which requires that they be registered. Appellants urge that specific standards for registration must be set forth in the master plan, statute or regulation filed with the Secretary of State pursuant to section 8 of article IV of the New York State Constitution and section 102 of the Executive Law.

Section 8 NYCRR 52.2 (c) requires that the faculty shall have demonstrated by their scholarship, etc., their competence to offer the courses and discharge the duties assigned to them. This supports the nonregistration of both doctoral programs which was based largely on the lack of active scholarship of the faculty. Furthermore, Part 52 was not meant to be definitive. This situation is analogous to the situation where a license may be denied or revoked on the basis of "unprofessional conduct" or untrustworthiness *(Matter of Gold v Lomenzo,* 29 NY2d 468; *Matter of Wassermann v Board of Regents,* 11 NY2d 173; *Matter of Bell v Board of Regents,* 295 NY 101). In both situations, the licensee or applicant can be said to be on notice of commonly accepted standards by which his performance will be judged. In the case at bar, no precise formula could have been published, and the exact point at which a program's quality falls below acceptable Ph.D. standards must be imprecise. All that should be required is that the commissioner exercise his discretion in a reasonable manner. (See generally *Matter of Pell v Board of Educ.,* 34 NY2d 222.) In the case at bar, the evaluation procedures were fair, including review by an impartial panel of scholars and an opportunity to reply to conclusions afforded to those being reviewed. The factors used in evaluation were not obviously unreasonable. It cannot be said that the commissioner's standard does not have a rational basis.

The judgment should be affirmed, without costs.

KOREMAN, P. J., SWEENEY, MAHONEY and LARKIN, JJ., concur.

Judgment affirmed, without costs.