■ In the Matter of MICHAEL Y. WARDER et al., Appellants, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 1.) In the Matter of MICHAEL Y. WARDER et al., Appellants, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents. (Proceeding No. 2.)—Appeal, in Proceeding No. 1, from a judgment of the Supreme Court at Special Term, entered November 14, 1978 in Albany County, which dismissed petitioners' application in a proceeding pursuant to CPLR article 78, to compel respondents to issue a determination on petitioners' application for a provisional charter to operate an academic institution. Appeal, in Proceeding No. 2, from a judgment of the Supreme Court at Special Term, entered November 14, 1978 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to annul respondents' determination which denied petitioners' application for a provisional charter to operate an academic institution. The two proceedings herein arise out of the same controversy, and, accordingly, we will consider them together in this deci-

sion. Petitioners are the proposed first trustees of the Unification Theological Seminary, which has been operated in Barrytown, New York, since 1975, as an unaccredited institution by the Holy Spirit Association for the Unification of World Christianity, i.e., the Unification Church. In April of 1975, pursuant to article 5 of the Education Law, petitioners applied to respondent Board of Regents for a provisional charter for the institution without which they could not obtain the legal authority to confer Master of Religious Education degrees upon graduates of the seminary. The Regents had made no determination concerning petitioners' application by July of 1977, however, and, contending that the decision thereon had been unreasonably delayed, petitioners commenced a CPLR article 78 proceeding to compel the Regents to act (Proceeding No. 1). In a decision dated November 28, 1977, Special Term ruled that the delay was not unreasonable under the circumstances presented and that the petition should be dismissed. No order was immediately entered on this decision, however, and on February 22, 1978, the Regents ultimately denied petitioners' application for a provisional charter. As a result, petitioners instituted a second CPLR article 78 proceeding to review the Regents' decision on the merits (Proceeding No. 2), and by decision mailed September 13, 1978, Special Term held that a rational basis existed in the record for the Regents' determination, and, consequently, granted respondents' cross motion for summary judgment dismissing the petition. Orders in both of the instant proceedings were subsequently signed on October 18, 1978 and entered in Albany County on November 14, 1978, and petitioners now appeal therefrom. Considering initially the appeal in Proceeding No. 1, we hold that the order of dismissal therein should be affirmed. Since the Regents have, as noted above, made a final determination of petitioners' request for a provisional charter, the subject matter of this dispute has been rendered moot and academic in all respects except for the fact that petitioners do not want Special Term's ruling that the Regents' delay in making a determination was reasonable to be binding in petitioners' challenge to the determination in Proceeding No. 2 on the merits. That being so, petitioners have preserved the issue of the reasonableness of the delay by their appeal in Proceeding No. 1, but upon our review of the record we nonetheless conclude that Special Term's ruling relative to the delay should not be disturbed. Not only is the Board of Regents a body of professional persons who meet only about once a month (8 NYCRR 3.1 [b]), but also in March of 1977 the State Legislature in a joint resolution requested that the board stay consideration of petitioners' application for a charter until extensive investigations and public hearings were held regarding the activities of the Unification Church and its founder, Reverend Sun Myung Moon. Furthermore, an examination of the records in these proceedings readily reveals that the Regents had a large volume of material to consider in ruling on petitioners' application, and also, there has been no showing that the Regents engineered the subject delay in bad faith (cf. *British Airways Bd. v Port Auth. of N. Y. & N. J.,* 564 F2d 1002). With these circumstances prevailing, the petition in Proceeding No. 1 was properly dismissed. Turning now to the second proceeding, we agree with Special Term that there is a rational basis in the record for the Regents' denial of a provisional charter to petitioners. On this issue, we note that the financial base of the seminary was unnecessarily brought into question when the State Education Department was not initially apprised by petitioners of the transfer of the assets of the Unification Church of New York, Inc., which was originally intended to provide the seminary's financial support, to the Unification Church of America, a California corporation which is now

supposed to provide the needed financial backing. Moreover, when they were later requested by the Regents to do so, petitioners also refused to provide an audited financial statement of the California corporation (see Education Law, § 218; 8 NYCRR 3.21 [a]; 8 NYCRR 52.2 [a]). Additionally, there is further evidence that petitioners falsely represented that the seminary was qualified to grant degrees even after being warned not to do so, that the seminary actually prepared and issued transcripts indicating that masters degrees had been awarded to its graduates and that the registrar of the seminary failed to maintain adequate records relative to the academic progress of students at the seminary. Upon such a record as this, there is clearly substantial evidentiary support for the Regents' denial of a provisional charter to petitioners, and, consequently, the Regents' decision to that effect has a rational basis. That being so, this decision must be sustained unless the procedures followed by the Regents in making their determination were somehow legally insufficient *(Matter of Pell v Board of Educ.,* 34 NY2d 222) and we conclude that they were not. In their challenge to the legal basis of the determination, petitioners initially argue that sections 216, 217 and 218 of the Education Law and sections 3.21 and 3.22 of the rules of the Board of Regents (8 NYCRR 3.21, 3.22), which regulate the granting of provisional charters, are unconstitutional because they contain no objective standards and fail to provide an applicant with notice of the requirements to obtain a charter. We find this contention to be without merit, and, in so ruling, would note that, in considering an application for a provisional charter, the Regents must act in an area where rigid formulas and definitive rules are not feasible or even desirable and where the Regents must exercise their collective professional judgment, and applicants are chargeable with knowledge of the commonly accepted standards by which they will be judged (cf. *Moore v Board of Regents of Univ. of State of N. Y.,* 59 AD2d 44, affd 44 NY2d 593). Moreover, we would further emphasize that an examination of the above-cited statutes and rules and also rules 3.23, 3.46 and 3.47 of the Board of Regents (8 NYCRR 3.23, 3.46, 3.47) and regulations 52.1 and 52.2 of the Commissioner of Education (8 NYCRR 52.1, 52.2) readily reveals that, taken together, they contain adequate guidelines relative to the operation of an academic institution so that applicants for a charter such as petitioners have sufficient notice of the standards which they must meet. Similarly without merit is petitioners' contention that the Regents' determination must be annulled because two members of the board were biased and prejudged the facts with regard to the charter application, thereby denying petitioners due process of law. While there is evidence in the record that at a board meeting in April of 1977, Regents Griffith and Yavner expressed misgivings as to the policies and operation of the Unification Church and as to the advisability of granting a charter to a seminary operated by that church, such misgivings must be juxtaposed with those of the Legislature as evidenced by the joint resolution noted above. Furthermore, Griffith and Yavner both indicated in their statements not that the charter application could not be approved, but rather that further investigation of the matter was needed. Under these circumstances, there has been no showing that Regents Griffith and Yavner could not objectively consider the charter application on its own merits with their individual judgments unaffected by extraneous matters prejudicial to petitioners' cause (cf. *Hortonville Dist. v Hortonville Educ. Assn.,* 426 US 482). Petitioners' remaining arguments are likewise lacking in substance. There has been absolutely no showing that either the Education Law or petitioners' freedom of association has been violated by the Regents in making their determination herein. Additionally,

petitioners have not been denied equal protection of the law merely because their application was closely scrutinized, and the Regents did not violate the Open Meetings Law by holding an executive session to discuss pending litigation (see Public Officers Law, § 100, subd 1, par [d]). Lastly, we find that summary judgment was properly granted to respondents because no material factual issues have been presented which would have necessitated a hearing. In sum, our consideration of the voluminous records in these proceedings has led us to conclude that this charter application has been thoroughly and properly investigated and that petitioners have been afforded a full and fair opportunity to present their case in support of the application. Most significantly, it is also clear that the application was denied because the seminary failed to meet the academic and financial requirements essential for the issuance of a charter. Judgments affirmed, without costs. Mahoney, P. J., Greenblott, Main, Mikoll and Casey, JJ., concur.