22-363-cv
*Bhatnagar v. The New School*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.

Present:

> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN,
> *Circuit Judges*.

---

SANKALP BHATNAGAR,

> *Plaintiff-Appellant*,

v.                                                     22-363-cv

THE NEW SCHOOL, PARSONS SCHOOL OF DESIGN,

> *Defendants-Appellees*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | FREDERICK J. BERMAN (Jacob S. Claveloux, *on the brief*), Shebitz Berman & Delforte, P.C., New York, NY. |
| For Defendants-Appellees: | MICHAEL P. COLLINS, Bond, Schoeneck & King, PLLC, White Plains, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Sankalp Bhatnagar appeals from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*) entered on January 24, 2022. From fall 2016 until August 2018, Bhatnagar was enrolled as a student in the Transdisciplinary Design Program (the "TD Program") at the New School (the "School").[1] Beginning in the spring of 2018, Bhatnagar began to struggle to complete his required thesis work. Bhatnagar's then-thesis advisor, concerned for his mental health, directed him to support resources available to students. In May of 2018, Bhatnagar left New York City for the summer without submitting a finalized thesis. On June 16, 2018, Jane Pirone, Dean of the TD Program, told Bhatnagar via email that the School would give him a "C" on his thesis-related courses in recognition of the work he had done to date (and would confer upon him his degree) if he did not turn in additional materials, including a final thesis, by July 25, 2018. The School did not grant Bhatnagar's requests for a long-term "Incomplete" grade and to "maintain [his] status" into the fall semester—options which, to the extent they existed, would have required Bhatnagar to submit a proposal and receive faculty approval (steps he never took). Ultimately, the School further extended Bhatnagar's final deadline until August 25, 2018, by which time Bhatnagar had made no additional submissions.

On March 16, 2020, Bhatnagar filed a complaint alleging: (1) a claim for disability discrimination under the Americans with Disability Act of 1990, 42 U.S.C. § 12101 *et seq.* (Count

---

[1] Some portions of the appendix have been filed under seal or with redactions. These filings are unsealed to the extent, and only to the extent, that they are discussed in this summary order.

I); (2) a claim for discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Count II); (3) a claim for discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Count III); (4) a claim for discrimination in violation of New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 291(2) (Count IV); (5) a claim for discrimination in violation of New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* (Count V); (6) a claim for breach of contract (Count VI); and (7) a claim for a violation of "Master Plan" registration requirements under New York Education Law ("NYSEL") § 237 (Count VII).

On June 8, 2021, the district court granted the School's motion to dismiss in part, dismissing Count III (the Title VI claim), Count VII (the NYSEL § 237 claim), and portions of Count V (the NYCHRL claim, as to claims of race and national origin discrimination). On January 24, 2022, the district court granted the School's motion for summary judgment as to Bhatnagar's Rehabilitation Act and breach of contract claims (Counts II and VI), dismissed Bhatnagar's ADA claim (Count I) for lack of standing, and declined to exercise supplemental jurisdiction over Bhatnagar's NYSHRL and NYCHRL claims (Counts IV and V). On appeal, Bhatnagar argues that the district court improperly granted summary judgment to the School on his claim under Section 504 of the Rehabilitation Act and on his breach of contract claim, and that the district court improperly dismissed his claim under NYSEL § 237. We review grants of motions for summary judgment and motions to dismiss de novo. *See Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). We assume the parties' familiarity with the case.

## I.   Rehabilitation Act claim

Bhatnagar argues that the district court erred in granting summary judgment to the School on his Rehabilitation Act claim because he presented sufficient evidence to establish a prima facie case of discrimination, and evidence of pretext to rebut the School's legitimate, non-discriminatory reason for the challenged conduct.  We disagree.

"Section 504 of the [Rehabilitation Act] prohibits a program or activity receiving federal funds from excluding or discriminating against persons based on disability."  *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019) (citing 29 U.S.C. § 794(a)).  Claims under Section 504 are litigated under the *McDonnell Douglas* burden-shifting framework.  *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir. 2002).  Under this framework, a plaintiff bears the burden of establishing a prima facie case of discriminatory, unlawful conduct, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged conduct.  *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994).  At that point, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual.  *Id.*

To establish a prima facie case under Section 504, a plaintiff must show that he: "(1) is a 'handicapped person' as defined by the [Rehabilitation Act]; (2) is 'otherwise qualified' to participate in the offered activity or benefit; (3) was excluded from such participation solely by reason of [his] handicap; and (4) was denied participation in a program that receives federal funds." *Biondo*, 935 F.3d at 73 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)).  On summary judgment, a plaintiff's burden at the prima facie stage requires production of sufficient evidence for a jury to find each element satisfied.  *See Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) ("In determining whether this initial burden is satisfied in

4

a Title VII retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.").

Bhatnagar first argues that he presented sufficient evidence to establish a prima facie case of discrimination. We need not decide whether Bhatnagar established the first, second, and fourth elements of a prima facie case because we conclude that Bhatnagar failed to establish that he was "excluded from . . . participation in [an offered activity or benefit] *solely* by reason of [his] handicap." *Biondo*, 935 F.3d at 73 (emphasis added); *see* 29 U.S.C. § 794(a). Bhatnagar failed to satisfy the third element because he did not present evidence sufficient to permit a jury to find that the School's decision-makers were motivated solely by his perceived mental health issues. To be sure, Bhatnagar presented evidence that officials at the School perceived him to suffer from mental health issues. However, all of the evidence Bhatnagar offered also includes undisputedly non-disability-related reasons for the School's decision. For example, Professor Lisa Norton stated that she believed the School's faculty viewed Bhatnagar as mentally ill, but she also indicated other reasons for the School's decision, including narratives among the faculty that he was "intentionally abusing the rules or the system or obfuscating or stalling or being difficult." Similarly, Bhatnagar points to an email Dean Pirone sent to other members of the administration on June 16, 2018, explaining her decision on Bhatnagar's grade and to confer upon him his degree. Included in that email are concerns such as: (1) accusations made by Bhatnagar against faculty; (2) disruption to the next class of students in the TD Program; (3) Bhatnagar's "inability to complete a full body of work and follow-through beyond a presentation deck for an MFA Thesis"; (4) his resistance to meeting with Dean Pirone to discuss his situation; and (5) and "ensur[ing] a [*sic*] smooth and as positive of a result as possible to both support Sankalp as a student and in

graduating." App'x at 142–43. Accordingly, even the evidence Bhatnagar cited to demonstrate discrimination points to multiple reasons for the School's decision, undermining any argument that the School excluded him solely by reason of his handicap.

In sum, the district court properly granted summary judgment to the School as to Bhatnagar's Rehabilitation Act claim.

## II.   Breach of contract claim

Bhatnagar next argues that the district court improperly granted summary judgment to the School on his breach of contract claim. For the reasons that follow, we affirm the district court's judgment as to this claim, albeit on different grounds. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (2023) ("We may affirm on any ground with support in the record, including grounds upon which the district court did not rely." (internal citations and quotation marks omitted)).

"Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). However, "[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance." *Susan M. v. New York L. Sch.*, 76 N.Y.2d 241, 245 (1990). Accordingly, New York law does not recognize claims for education malpractice. *See Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 444–45 (1979) ("To entertain a cause of action for 'educational malpractice' would require the courts not merely to make judgments as to the validity of broad educational policies—a course we have unalteringly eschewed in the past—but, more importantly, to sit in review of the day-to-day implementation of

6

these policies."). Courts applying New York law routinely reject claims involving grading decisions (or other matters of academic discretion). *See, e.g.*, *Susan M.*, 76 N.Y.2d at 247 ("[I]n the absence of demonstrated bad faith, arbitrariness, capriciousness, irrationality or a constitutional or statutory violation, a student's challenge to a particular grade or other academic determination relating to a genuine substantive evaluation of the student's academic capabilities, is beyond the scope of judicial review."); *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413 (1980) ("[C]ourts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community."). *But see Papelino*, 633 F.3d at 93–94 (finding "one of those rare education cases" where breach of contract theory was appropriate because of evidence of bad faith as a result of sexual harassment and other concerns).

These principles bar Bhatnagar's contract claim here. Although Bhatnagar has brought this claim on a breach of contract theory, artful pleading cannot be used as an end-run around New York's bar on claims for educational malpractice. *See, e.g.*, *Sirohi v. Lee*, 634 N.Y.S.2d 119, 120 (1st Dep't 1995) ("The [lower court] properly dismissed [three] causes of action of the complaint alleging, in essence, that the Columbia trustees and individual defendants had failed to provide the quality of educational environment promised and made false representations concerning the atmosphere and disciplinary process at Columbia. The court correctly found these claims to be an improper attempt to circumvent the principle that there is no cognizable tort claim in New York for 'educational malpractice.'"). Bhatnagar's claim alleges a breach of contract because the School gave him a passing grade on his thesis and, as a result, conferred upon him a degree, despite his failure to turn in a final thesis project. This claim is fundamentally a grading dispute, a fact confirmed both by Bhatnagar's own characterization of his claim, and by the evidence that the School's decision was the result of a "pedagogical assessment" that a "C+" was the most generous

grade it could give based on the totality of Bhatnagar's work. Bhatnagar's contract claim is an artfully pleaded, non-cognizable claim for educational malpractice, and the district court's dismissal is therefore affirmed.

## III.    New York State Education Law § 237 claim

Finally, Bhatnagar contends that the district court erred in dismissing his claim under NYSEL § 237. We disagree.

NYSEL § 237, titled "Regents plan for higher education including approved plans of state university and city university of New York and plans of independent institutions of higher education," establishes a requirement that public and private "higher educational institutions" submit "long-range master plans for their development" every four years to the Board of Regents of the University of the State of New York (the "Regents") for review. N.Y. Educ. Law § 237(2). Section 237's stated purposes are to identify and define the needs of the citizens of New York, and to define and develop the missions and programs of higher education in response to those needs. N.Y. Educ. Law § 237(1). Neither party identifies a case permitting or prohibiting a cause of action under § 237.

"In New York, where a statute does not make express provision for a private remedy, such a remedy may be had only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021) (internal quotation marks omitted). "To evaluate whether the legislative intent favors such implied private rights of action, we have identified three relevant factors: '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Id.* (quoting *Sheehy v.*

8

*Big Flats Cmty. Day, Inc*., 73 N.Y.2d 629, 633 (1989)). All three factors must be present before

an implied private right of action will be recognized, but:

> The third factor is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others—a choice that should be respected by the courts. In that vein, we have held that public and private avenues of enforcement do not always harmonize with one another. Both may ultimately, at least in theory, promote statutory compliance, but they are born of different motivations and may produce a different allocation of benefits owing to differences in approach."

*Id.* at 360–61 (alterations, internal citations, and internal quotation marks omitted).

Even assuming that the first two factors are present under § 237, the third, "most important"

factor is not. The text of the statute is clear that, to the extent that the statute creates affirmative

obligations for institutions of higher education, the enforcement of those obligations is entrusted

to the Regents. The relevant subsections of the statute all include the phrase "the regents shall,"

and outline powers and responsibilities of the Regents under the statute. *See* N.Y. Educ. Law

§ 237 (2)–(5) (outlining duties of Regents, including to request and review long-range master plans

from public and independent institutions of higher education; to create a "regents plan or general

revision thereof" regarding statewide higher education; to "evaluate all available information with

respect to the plans and facilities of independent institutions" and "review and act upon the

proposed plan and recommendations of the state university trustees and upon the proposed plan

and recommendations of the board of higher education in the city of New York and incorporate

such information, recommendations and each of the component plans so acted upon into a tentative

regents plan or general revision thereof for the development of higher education in the state"; and

to "transmit their plan or general revision thereof . . . to the governor and the legislature" for

approval or disapproval by the governor). In other words, § 237 empowers the *Regents* to act in

the development, submission, and review of these plans. What little judicial consideration of § 237

exists confirms this reading: the passage of § 237 did not disrupt the Regents' significant statewide power to enforce New York's education laws and to craft the structure of New York's higher education system. *See Moore v. Bd. of Regents*, 397 N.Y.S.2d 449, 451–52 (3d Dep't 1977) (affirming the Regents' refusal to re-register two PhD programs for, among other things, violation of a state regulation, finding that NYSEL §§ 207 and 305 granted "broad power" to Regents and Commissioner of Education, and that § 237 did not "restrict the overall authority vested in the Regents for the supervision and control of the quality of education in the State," and "[a] broad grant of authority must necessarily include those powers which are fairly within the bounds of the legislative grant").[2] We therefore affirm the district court's dismissal of this claim.

We have considered Plaintiff's remaining arguments and find them unpersuasive. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court

---

[2] Bhatnagar's complaint and briefing also cite several New York state regulations. However, he points to no New York *statute*—other than § 237—to support the proposition that these regulations are enforceable through a private right of action. Accordingly, we begin and end our analysis of that issue with § 237. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").