21-2603-cv (L)
Behrens v. JPMorgan Chase Bank, N.A.

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2023
Argued: October 4, 2023
Decided: March 13, 2024

Nos. 21-2603-cv (L), 21-2651-cv (XAP), 21-2660-cv (XAP), 21-2661-cv (XAP), 21-2662-cv (XAP)

_____

BRUCE BEHRENS, KATHLEEN BEHRENS, DAVID SCHEFFERT, SHERRI SCHEFFERT, and RICHARD WAKEFORD, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants-Cross-Appellees,*

v.

JPMORGAN CHASE BANK, N.A., U.S. BANK, N.A., CHICAGO MERCANTILE EXCHANGE, INC., THE CME GROUP, INC., and NATIONAL FUTURES ASSOCIATION,

*Defendants-Appellees-Cross-Appellants,*

MILLENNIUM TRUST CO., a.k.a. Millennium Trust Co. LLC, PAUL THOMAS, RUSSELL WASENDORF, JR., and PERRY COMEAU,

*Defendants-Appellees,*

STEVE BREWER, a.k.a. Steven John Brewer, GARLON MAXWELL, AMBER MAXWELL, RUSSELL WASENDORF, and DOES #1-40,

_____

Before: JACOBS, WESLEY and ROBINSON, *Circuit Judges*.

Five former customers of Peregrine Financial Group, Inc., the defunct

futures commission merchant, appeal the dismissal of their putative class action.

In a summary order published simultaneously with this opinion, we affirm the

district court's dismissal with prejudice of all federal claims as time barred and

the dismissal of one of the Defendants.   We publish this opinion to decide only

the sole issue on the cross-appeal: whether a party may compel a district court to

exercise subject-matter jurisdiction on a theory of jurisdiction that the party has

raised untimely.   We hold that it may not and accordingly **AFFIRM**.

_____

SUSAN JOAN LEVY, Susan J. Levy, Esq., New York, NY, *for Plaintiffs-Appellants-Cross-Appellees*.

CHRISTOPHER J. HOUPT, Mayer Brown LLP, New York, NY, *for Defendant-Appellee-Cross-Appellant* JPMorgan Chase Bank, N.A.

ERIC R. SHERMAN, Dorsey & Whitney LLP, Minneapolis, MN, *for Defendant-Appellee-Cross-Appellant* U.S. Bank, N.A.

_____

[*]  The Clerk's office is directed to amend the caption.

ABBY F. RUDZIN (Kayla N. Haran, *on the brief*), O'Melveny & Myers LLP, New York, NY, *for Defendants-Appellees-Cross-Appellants* Chicago Mercantile Exchange, Inc. and The CME Group, Inc.

GREGORY M. BOYLE, Jenner & Block LLP, Chicago, IL (Adam G. Unikowsky, Jenner & Block LLP, Washington, DC, *on the brief*), *for Defendant-Appellee-Cross-Appellant* National Futures Association.

MICHAEL E. GIORDANO (Samuel M. Braverman, Louis V. Fasulo, *on the brief*), Fasulo Braverman & DiMaggio, LLP, New York, NY, *for Defendant-Appellee* Millennium Trust Co.

Lisa L. Shrewsberry, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, *for Defendant-Appellee* Paul Thomas.

Julie B. Begovan, Griesing Law, LLC, Brooklyn, NY, *for Defendants-Appellees* Russell Wasendorf, Jr., and Perry Comeau.

DENNIS JACOBS, *Circuit Judge*:

Five former customers ("Plaintiffs") of Peregrine Financial Group, Inc. ("Peregrine"), the defunct futures commission merchant, appeal the dismissal of their putative class action by the United States District Court for the Southern District of New York (Broderick, *J.*).[1]   In a summary order published

---

[1]  A futures commission merchant is "the commodity market's equivalent of a securities brokerage house, soliciting and accepting orders for futures contracts and accepting funds or extending credit in connection therewith."   In re

simultaneously with this opinion, we affirm the dismissal of all federal claims as time barred (and the dismissal of one of the Defendants); this opinion decides only the issue raised on the cross-appeal.   Several Defendants, well-satisfied with the dismissal with prejudice of the federal claims, untimely moved the district court to reconsider the dismissal without prejudice of the analogous state-law claims.   Defendants' motions argued for the first time that the district court was obligated to exercise subject-matter jurisdiction over the state-law claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d); the motions were denied.   We publish this opinion to consider a question of first impression in this Circuit: whether the existence of subject-matter jurisdiction requires a district court to exercise it, even if it is invoked belatedly--on analogy to the rule that a party can object to the *lack* of such jurisdiction "at any time." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000). We hold that a party may forfeit subject-matter jurisdiction by failing to invoke it timely.   We accordingly **AFFIRM**.

---

Amaranth Nat. Gas Commodities Litig., 730 F.3d 170, 175 (2d Cir. 2013) (citation omitted); see also 7 U.S.C. § 1a(28).

# I.

## A.

We accept all factual allegations in the complaint as true in reviewing a district court's ruling on a motion to dismiss. Muto v. CBS Corp., 668 F.3d 53, 56 (2d Cir. 2012).

Plaintiffs--all natives of Oelwein, Iowa--have "invest[ed] in futures and options contracts since 2005."[2]  A205–06 (SAC ¶ 110).  In 2007, Plaintiffs transferred their assets to Peregrine, allegedly on the promise that it was a "winning strategy," made by investment advisers at "a local steakhouse" in Oelwein.  A222 (SAC ¶¶ 199, 201).  In October 2008, during the subprime mortgage crisis, Plaintiffs' "entire investments were wiped out."  A206 (SAC ¶ 115).  In April 2009, Plaintiffs retained counsel and pursued arbitration with the National Futures Association.  Plaintiffs viewed the arbitration as "clearly a fraud case" and raised various claims related to violations of margin rules, but ultimately recovered an "utterly inconsequential" award.  A317 (SAC ¶ 662); A477.

---

[2] In citations, "A" refers to the appendix; "SA" refers to the special appendix; and "SAC" refers to the Second Amended Complaint.

Plaintiffs' claims got new wind in 2012 when Peregrine's CEO, Russell Wasendorf, Sr., left a confession note after attempting suicide. The note confessed that Wasendorf had long embezzled from Peregrine's customer accounts and diverted some $200 million for his personal use. The confession prompted a criminal prosecution, Peregrine's bankruptcy, and multiple class-action lawsuits; Plaintiffs attempted to participate in some of these actions but received no recovery.

On July 11, 2016, eight years after their financial losses, Plaintiffs commenced the present action. Their complaint sketched a theory of harm that attempted to connect their prior losses in 2008 with Wasendorf's confession in 2012. Plaintiffs posited that, to camouflage his misappropriation scheme, Wasendorf had to create the illusion of "legitimate trading losses," but without engaging in genuine trades that carried "the risk of having to satisfy counterparty monetary obligations." A184–85, 194 (SAC ¶¶ 12, 47). Therefore, "reason dictates" that Wasendorf must have conducted "fictitious trades" to "shadow trade the actual market to give the appearance to [customers] that they lost due to real transactions," but with the ultimate purpose "to deplete and destroy a customer account." A186, 189–90, 192 (SAC ¶¶ 18, 28, 37). From this

6

view, Plaintiffs surmised that their 2008 losses were not caused by improper trades that violated margin rules, but by outright "theft" disguised as "a total trading loss." A192–93 (SAC ¶¶ 38, 43).

## B.

On March 31, 2019, the district court dismissed the federal claims[3] as untimely with prejudice, and declined to exercise supplemental jurisdiction. The remaining state-law claims were thus dismissed without prejudice. (With respect to one of the Defendants, the district court separately dismissed all claims against it pursuant to an enforceable arbitration agreement.)

On May 16, 2019, over a month later, five Defendants ("Cross-Appealing Defendants")[4] filed motions for reconsideration, arguing for the first time that the district court must exercise subject-matter jurisdiction over Plaintiffs' state-law claims pursuant to CAFA. It is undisputed that the motions were filed well after the fourteen-day deadline imposed by the local rules. The district court

---

[3] Plaintiffs' federal claims are based on alleged violations of the Commodity Exchange Act, 7 U.S.C. §§ 1–27f, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

[4] The Cross-Appealing Defendants are Chicago Mercantile Exchange, Inc.; CME Group, Inc.; National Futures Association; JPMorgan Chase Bank, N.A.; and U.S. Bank, N.A.

rejected the Cross-Defendants' argument that jurisdictional questions are "always ripe"; it therefore declined to consider the "untimely motions." SA42–43. In so holding, the district court distinguished between (i) *objecting* to a federal court's exercise of jurisdiction, which the district court understood a party could do at any stage in the litigation, and (ii) *invoking* the district court's jurisdiction, which the district court held, in substance, can be forfeited. The Cross-Appealing Defendants argue that the district court was obligated to exercise CAFA jurisdiction once they raised it, citing to the general principle that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

We review a district court's decision on a motion for reconsideration for abuse of discretion. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A district court abuses its discretion when "its decision rests on an error of law." Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001). We review de novo a district court's "legal conclusion as to whether subject-matter jurisdiction exists." A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc., 35 F.4th 913, 915 (2d Cir. 2022) (citation and alteration omitted).

8

## II.

We consider only the question whether the Cross-Appealing Defendants could require the district court to exercise subject-matter jurisdiction belatedly, just as parties can successfully object to a court's lack of such jurisdiction "at any time," even after a judgment or decision has been issued. Lussier, 211 F.3d at 700.

We have yet to answer this question in a majority opinion.[5] We now hold that a federal court's obligation to decide and exercise jurisdiction is not reciprocal. Specifically, while federal courts must ensure that they do not *lack* subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect, there is no corresponding obligation to *find and exercise* subject-matter jurisdiction on a basis not raised by the parties. Accordingly, a party forfeits the

---

[5] The recent concurring opinion in Abbo-Bradley v. City of Niagara Falls addressed this question. 73 F.4th 143, 154–56 (2d Cir. 2023) (Sullivan, *J.*, concurring). Abbo-Bradley concerned the timeliness of removal, but the appeal also raised the auxiliary issue of whether a district court "was obliged" to consider a basis for subject-matter jurisdiction that no party had raised. Id. at 154. The concurrence concluded that "our precedents clearly support the 'one-way' view of the obligation to inquire sua sponte into subject-matter jurisdiction"--i.e., that a court needs to consider only the "potential jurisdictional *defects* that the parties had failed to point out," not the "unbriefed arguments *in support of*" jurisdiction. Id. at 155.

9

invocation of subject-matter jurisdiction when it fails to timely raise it.

*First*, this holding accords with the general principle that federal courts are "courts of limited jurisdiction." Hepburn & Dundas v. Ellzey, 6 U.S. 445, 450 (1805) (Marshall, *C.J.*). The consequence of exercising jurisdiction where none exists is not the same as declining to exercise jurisdiction when a district court has not been timely called to do so. If a federal court lacks jurisdiction, it has no adjudicative power to hear the parties' dispute, and any relief it grants "would be void." Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000). For this reason, a party can challenge--"at any time"--a federal court's prior judgment or order for lack of subject-matter jurisdiction. Lussier, 211 F.3d at 700. No voidness concern arises when a federal court declines to exercise jurisdiction. Putting aside the few cases of exclusive federal jurisdiction,[6] a party deprived of its choice of federal forum can still pursue its claims in state courts.

*Second*, the idea that a party might, under some circumstances, forfeit the

---

[6] See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 578 U.S. 374, 376 (2016) (noting that federal courts have exclusive jurisdiction over claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a)).

invocation of subject-matter jurisdiction is not novel.   The familiar example is the federal removal statute.   Generally, a defendant seeking to remove a case from state court to federal court must do so "within 30 days" of receiving the initial pleading or upon ascertaining removability.   Abbo-Bradley, 73 F.4th at 150 (majority opinion) (citing 28 U.S.C. § 1446(b)).   Some exceptions may toll this deadline, but at some point, a defendant who fails to remove the case timely forfeits federal jurisdiction.   Id. at 150–51 (affirming the remand of an untimely-filed notice of removal, even though the defendants raised a colorable argument for federal-officer jurisdiction); cf. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (holding that the party invoking a federal court's jurisdiction "has the burden of proving by a preponderance of the evidence that it exists").

*Third*, the distinction between challenging versus invoking subject-matter jurisdiction is observed by the Federal Rules of Civil Procedure and by precedents of both the Supreme Court and our Court.   There is a defense of "*lack of* subject-matter jurisdiction," which can be raised at any time.   Fed. R. Civ. P. 12(b)(1) (emphasis added).   And a district court "must" dismiss an action whenever it determines that it "*lacks* subject-matter jurisdiction."   Fed. R. Civ. P. 12(h)(3) (emphasis added).   The Supreme Court has used similar wording in

11

cautioning against an overreach in federal jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) ("The *objection* that a federal court *lacks* subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (emphasis added)); Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they *do not exceed* the scope of their jurisdiction . . . ." (emphasis added)).

We have used the same phrasing when describing the obligation to attend to our subject-matter jurisdiction. Lussier held it "axiomatic" that "federal courts . . . may not decide cases over which they *lack* subject matter jurisdiction." 211 F.3d at 700 (emphasis added). In Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, we held that "[i]f subject matter jurisdiction is *lacking* and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte." 565 F.3d 56, 62 (2d Cir. 2009) (emphasis added); cf. Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 328 (2d Cir. 2005) ("[W]here jurisdiction is *questionable* we are obliged to examine the question sua sponte." (emphasis added)). No case from the Supreme Court or this Circuit stands for the converse proposition that parties can *invoke* jurisdiction

12

at any time and oblige federal courts to ensure that they have not overlooked an unarticulated basis for jurisdiction.

*Finally*, three Courts of Appeals have upheld the "one-way" view of the jurisdictional inquiry. The Fifth Circuit held: "[Although] we must always be vigilant to ensure that we have subject matter jurisdiction, addressing this issue sua sponte if need be . . . [,] this discipline is separate from our declining to address *untimely* raised legal theories in support of that jurisdiction." Ceres Gulf v. Cooper, 957 F.2d 1199, 1207 n.16 (5th Cir. 1992) (emphasis added). The First Circuit made the same point: "Even though federal subject-matter jurisdiction cannot be established through waiver or estoppel, it may be *defeated* by waiver or estoppel." Sexual Minorities Uganda v. Lively, 899 F.3d 24, 34 (1st Cir. 2018) (emphasis added). Likewise, the Tenth Circuit held: "Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction." United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 n.2 (10th Cir. 1996), superseded by statute on other grounds as recognized in Atlas Biologicals, Inc. v. Kutrubes, 50 F.4th 1307, 1323 (10th Cir. 2022).

\*      \*      \*

In summary: (i) if a party properly and timely invokes subject-matter jurisdiction, the district court must exercise it; (ii) if no party invokes a theory of subject-matter jurisdiction, the district court is not obligated to consider it or to search for jurisdiction <u>sua sponte</u>, although it may choose to do so; and (iii) if a party invokes subject-matter jurisdiction untimely, the district court has discretion to consider the issue or to deem it forfeited, subject to the typical abuse-of-discretion review.   Cf. <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003) ("[W]e review the district court's decision to exercise [supplemental jurisdiction under 28 U.S.C. § 1367(a)] under an abuse-of-discretion standard.").   The factors relevant to this review include, among others, the length of the delay, the procedural posture of the case, and the availability of an alternative forum.   Cf. <u>Nowak v. Ironworkers Loc. 6 Pension Fund</u>, 81 F.3d 1182, 1191 (2d Cir. 1996) ("In reviewing [a district court's] decision to retain [supplemental] jurisdiction [when all federal claims have been dismissed,] we consider factors such as judicial economy, convenience, fairness, and comity.").

Here, if the CAFA requirements under §§ 1332(d)(2) and (d)(5) are met and

14

no exceptions to CAFA under §§ (d)(3) and (d)(4) apply, "subject matter jurisdiction under CAFA is not discretionary." L.S. v. Webloyalty.com, Inc., 954 F.3d 110, 118 (2d Cir. 2020). Had jurisdiction been raised timely, the district court would have been obligated to consider whether CAFA applies. However, since the Cross-Appealing Defendants invoked CAFA jurisdiction untimely--filing the motions for reconsideration over a month late, in a case in which discovery has not yet begun, and advancing claims that the parties may continue to litigate in state courts--we conclude that the district court was within its discretion to decline to consider it.

In reaching this conclusion, we can foresee that this ruling may simply delay the inevitable--i.e., if Plaintiffs re-file their claims in state court and Defendants remove that case to federal court, we come back to where we are. But "subject-matter jurisdiction . . . does not entail an assessment of convenience." Wachovia Bank v. Schmidt, 546 U.S. 303, 316 (2006).

For the foregoing reasons, and for the reasons stated in the summary order we publish simultaneously with this opinion, we **AFFIRM** the district court's

dismissal of this action.[7]

---

[7] Plaintiffs also filed a motion to dismiss the cross-appeal (ECF Nos. 151, 157), which was referred to the merits panel (ECF No. 177). Because we resolve the cross-appeal on the merits, Plaintiffs' motion is **DENIED AS MOOT**.