23-1339(L)
*Brook v. Ruotolo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of August, two thousand twenty-four.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges*,
> CLAIRE R. KELLY,
> *Judge*.[*]

_____

ADAM BROOK, M.D., PH.D., Individually and as Executor of the Estate of Dr. Judith Brook,

> *Plaintiff-Appellant*,

> v.                                             Nos. 23-1339(L), 23-7446(Con)

JOSEPH RUOTOLO, ESQ., IRA SALZMAN, ESQ., DIANA ROSENTHAL, ESQ., FELICE

_____

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

WECHSLER, ESQ., MENTAL HYGIENE LEGAL SERVICE, KENNETH BAROCAS, ESQ., IAN SHAINBROWN, ESQ., THE SHAINBROWN FIRM LLC, KARL HUTH, ESQ., HUTH REYNOLDS LLP, HOWARD MUSER, ALLEGIANT HOME CARE, L.L.C., ANN REEN, R.N., MARY MANNING WALSH NURSING HOME, ALLEN LOGERQUIST, M.D., FLORENCE PUA, M.D., TOWANA MOE, R.N., JOHN MICHAEL NATIVIDAD, ARTHUR AKPEROV, DORIS BERMUDEZ, NAVJOT SEPLA, MARIE SWEET MINGOA, JOHN DOES #1-10, MONITOR/ME LLC, JASON KUBERT, M.D., ANTHONY BACCHI, M.D.,

*Defendants-Appellees*,

ERIC NOWAKOWSKI, R.P.A.C.,

*Consolidated Defendant-Appellee*,

ANTHONY BACCHI, M.D.,

*Defendant.*†

---

| | |
|---|---|
| **For Appellant Adam Brook, Individually:** | ADAM BROOK, *pro se*, Houston, TX. |
| **For Appellant Adam Brook, as Executor of the Estate of Judith Brook:** | Daniel W. Isaacs, Law Offices of Daniel W. Isaacs, PLLC, New York, NY. |

---

† The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Appellees Mental Hygiene Legal Service, Diana Rosenthal, and Felice Wechsler:**

BLAIR J. GREENWALD, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Matthew W. Grieco, Senior Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY.

**For Appellee Joseph Ruotolo:**

LISSETT C. FERREIRA (Colleen M. Meenan, *on the brief*), Meenan & Associates, LLC, New York, NY.

**For Appellee Ira Salzman:**

JOSEPH L. FRANCOEUR, Wilson Elser Moskowitz Edelman & Dicker LLP, New York, NY.

**For Appellees Karl Huth and Huth Reynolds LLP:**

MATTHEW REYNOLDS (Joshua L. Rushing, Huth Reynolds LLP, Huntington, NY, *on the brief*), Huth Reynolds LLP, Chesterfield, VA.

**For Appellee Kenneth Barocas:**

ERIN O'LEARY, Lewis Brisbois Bisgaard & Smith LLP, New York, NY.

**For Appellees Allegiant Home Care, L.L.C. and Ann Reen:**

DAVID S. RUTHERFORD, Rutherford & Christie, LLP, New York, NY.

**For Appellees Arthur Akperov, Doris Bermudez, Allen Logerquist, Mary Manning Walsh Nursing Home, Marie Sweet Mingoa, Towana Moe, John Michael Natividad, Florence Pua, and Navjot Sepla:**

CHARLES KUTNER, Kutner Friedrich, LLP, New York, NY.

**For Appellee Jason Kubert:**

WAYNE M. RUBIN, Feldman, Kleidman, Collins & Sappe LLP, Fishkill, NY.

**For Appellees Ian Shainbrown, The Shainbrown Firm LLC, and Howard Muser:**

Ian Shainbrown, The Shainbrown Firm LLC, Livingston, NJ.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 22, 2023 judgment of the district court is **AFFIRMED**.

Dr. Adam Brook, individually and on behalf of the estate of his mother, Dr. Judith Brook, appeals from the district court's judgment dismissing his claims under 42 U.S.C. § 1983 and state law against numerous individuals and entities involved in Judith's care at the end of her life.[1]  Adam alleged that the defendants conspired with a state court judge and/or each other to declare Judith

---

[1] Because both mother and son were/are doctors with the same surname, we will refer to them by their respective first names.   Although Adam listed the Estate of Judith Brook as a separate plaintiff in one of his now-consolidated complaints, Adam, as executor of Judith's estate, is the proper party to assert claims arising from the alleged infringement of Judith's federal rights. *See Barrett v. United States*, 689 F.2d 324, 331 (2d Cir. 1982); *see also Robertson v. Wegmann*, 436 U.S. 584, 589–90 (1978) ("Under [section] 1988, . . . state statutory law, modifying the common law, provides the principal reference point in determining survival of civil rights actions."); N.Y. Estates, Powers & Trusts Law § 11-3.2(b) (providing that personal representative of decedent may bring action for injury to decedent); *id.* § 1-2.13 (defining personal representative as person who has received letters to administer estate of decedent).   Adam properly retained counsel for the claims he brought in his role as executor of the estate.   *See Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) (holding that executor of estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant).

incapacitated in a scheme to siphon off her assets before her death.   The district court dismissed Adam's consolidated complaints for lack of subject matter jurisdiction, reasoning that none of the defendants was a state actor or was otherwise acting under color of law, and that the court therefore lacked federal question jurisdiction under 28 U.S.C. § 1331.   It further concluded that Adam had abandoned any assertion of diversity jurisdiction, so it lacked original jurisdiction entirely and could not exercise supplemental jurisdiction over his numerous state-law claims.[2]   *See Brook v. Ruotolo*, Nos. 22-cv-6173 (ER), 23-cv-1319 (ER), 2023 WL 5352773 (S.D.N.Y. Aug. 21, 2023); 28 U.S.C. § 1367(a).   We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

## I.     Subject Matter Jurisdiction

At the outset, we note that the district court erred in concluding that it lacked subject matter jurisdiction over Adam's section 1983 claims.   Federal question jurisdiction exists for "all civil actions arising under the Constitution,

---

[2] Adam does not challenge the district court's conclusion that he failed to carry his burden to establish diversity jurisdiction.   We therefore need not address the issue.   *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered [forfeited] and normally will not be addressed on appeal."); *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 205 (2d Cir. 2024) (holding that invocation of subject-matter jurisdiction may be forfeited).

laws, or treaties of the United States." 28 U.S.C. § 1331. To find federal question jurisdiction, federal courts look to the face of the complaint to see "if [the] plaintiff's statement of his [or her] own cause of action shows that it is based on federal law." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (internal quotation marks omitted). Adam's section 1983 claims were clearly based on federal law. While the district court concluded that those section 1983 claims failed because none of the defendants was a state actor, the failure to show state action is not a "jurisdictional deficiency." *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997). Rather, it is a merits issue "to be tested under Rule 12(b)(6)." *Id.* The district court therefore had subject matter jurisdiction over Adam's section 1983 claims.

## II. Section 1983 Claims

Of course, the failure to plead facts showing that any of the defendants was a state actor or was otherwise acting under color of law would be a proper basis for dismissing Adam's claims under Rule 12(b)(6). But we need not resolve the "fact-intensive inquiry" "that the state-action doctrine demands," *Lindke v. Freed*, 601 U.S. 187, 197 (2024), because Adam's section 1983 claims fail for a more obvious reason – namely, that Adam's allegations of a grand

6

conspiracy to deprive him and his mother of their federal rights are entirely conclusory. Because he has failed to plead facts that would support a reasonable inference that any of the defendants violated his or his mother's federal rights, we affirm the district court's dismissal of his section 1983 claims. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) ("We may affirm on any ground with support in the record, including grounds upon which the district court did not rely." (internal quotation marks omitted)).[3]

The state court proceedings giving rise to this suit began in May 2019 when Judith's brother, Howard Muser, brought a petition pursuant to New York Mental Hygiene Law ("NYMHL") Article 81 to have himself appointed as Judith's guardian. *See* J. App'x at 285–97. Muser alleged that Judith was incapacitated and that her adult son, Adam, was withholding medical treatment and support from her. According to Muser, Adam "assumed control of Judith's assets" and "would oftentimes engage in activities against Judith's best interest," including refusing Judith's purported requests "for an aid[e] to assist [her] with

---

[3] After oral argument, Adam sought permission to file an oversized letter pursuant to Federal Rule of Appellate Procedure 28(j) regarding our caselaw on state action. *See* Doc. No. 165. Because we resolve this appeal without reaching the state action question, we deny Adam's motion as moot.

her daily functions." *Id.* at 288–90. Muser requested that a temporary guardian be appointed pending resolution of his petition.

Shortly after receiving Muser's petition, a New York court appointed defendant Joseph Ruotolo as Judith's temporary guardian, as well as defendants Diana Rosenthal and Felice Wechsler as counsel to represent Judith during the guardianship proceedings. After holding four hearings, including two in which Judith herself testified, the state court found that Judith was incapacitated and entered an order that (1) prohibited Adam from removing Judith from New York, (2) restrained Adam from interfering with any home care or other medical treatment that the temporary guardian deemed appropriate, (3) voided all powers of attorney and health care proxies that Judith had previously executed, and (4) expanded the temporary guardian's powers to act on Judith's behalf. *See id.* at 302–04. Several months later, Judith died, and the guardianship ended.

Adam subsequently brought this section 1983 action on behalf of himself and the estate of Judith, alleging a grand conspiracy among the state court judge, Judith's temporary guardian, the court evaluator, Judith's attorneys, Muser, and Muser's attorneys to have Judith declared incapacitated so that the court could "award lucrative fees" to the conspirators from Judith's substantial assets. *Id.*

at 59. In a separate complaint, Adam alleged a conspiracy between Judith's temporary guardian and the Mary Manning Walsh Nursing Home, based on the temporary guardian's decision to place Judith in the nursing home after she was released from the hospital.

"It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted). Yet that is precisely what Adam has done here. Based purely on conjecture, Adam baldly asserts in his first complaint that the defendants conspired to find Judith incapacitated, "because a finding of 'incompetence' would then enable the judge to use [Judith's] substantial assets . . . to pay all those defendant participants in their respective roles." J. App'x at 29. Adam's section 1983 claim in his second complaint fares no better, as it boils down to a conclusory assertion that the Mary Manning Walsh nursing home conspired to deprive Judith of her federal rights when it accepted her as a resident after the temporary guardian placed her there upon her discharge from the hospital.[4]

---

[4] In both complaints, Adam insists that the temporary guardian's placement of Judith in a nursing home – a placement that lasted four days – did not comply with state law, since the

9

Adam's litany of unsupported assertions about the intent and motivations of the various defendants do not salvage his claims. We "have no obligation to entertain pure speculation and conjecture." *Gallop*, 642 F.3d at 368. Adam alleges, for example, that the defendants "viewed [Judith] as a walking piggybank" and that "Ruotolo considered Adam Brook easy prey for Ruotolo's schemes to claim Adam Brook had breached his fiduciary duty to his own mother." J. App'x at 123. These statements do not render Adam's section 1983 claims non-conclusory. Equally conclusory is Adam's insistence that Judith's court-appointed attorneys – who as state employees presumably would not have benefitted from any court-ordered fees – conspired to have Judith declared incapacitated because they might *someday* "decide to enter private practice in guardianship law in New York" with the expectation "that the other guardianship attorneys would repay the favor." *Id.* at 88. Other assertions are simply nonsensical. Adam alleges that Ruotolo's decision to include the court

---

guardian allegedly did not have the proper court order to make such a placement. But the state court's January 3, 2020 order authorized the temporary guardian to "[p]rovide for the maintenance and support of [Judith], including paying all bills as may be reasonabl[y] necessary to maintain [Judith] at home *or in an appropriate facility*." J. App'x at 304 (emphasis added). In any case, Adam does not explain how the alleged state procedural violation amounted to a violation of Judith's federal constitutional rights. *See Zahra v. Town of Southold*, 48 F.3d 674, 682 (2d Cir. 1995) ("Our precedents have firmly established that the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights.").

evaluator and the court on an email somehow "reveal[ed] that [Ruotolo's] intention was not for Judith Brook's welfare, but rather to instigate a controversy with Dr. Adam Brook, so that Ruotolo could then cite the controversy to the [c]ourt to void Adam Brook's power-of-attorney and appoint Ruotolo as Judith Brook's guardian." *Id.* at 124. How that accusation follows from Ruotolo cc'ing the court evaluator and court on an email is a mystery.

Adam's allegation that Ruotolo and the court evaluator "rigged" the January 3, 2020 hearing is equally conclusory. *Id.* at 174. Adam points out that Ruotolo's time sheet shows that Ruotolo and the court evaluator had a phone call the day before the hearing, after which Ruotolo reviewed the court evaluator's report and prepared a draft order to be submitted to the court. Adam insists that the court evaluator and guardian used the call to "plot[]-out how they were going to rig the January 3 hearing." *Id.* But Adam pleads no facts from which that conclusion could reasonably be inferred. It is no secret that the court evaluator, the court-appointed guardian, and the court itself all were of the view that Judith was incapacitated and that guardianship and care by someone other

11

than Adam were necessary to protect her interests. The January 3 hearing was not "rigged" just because Adam disagrees with that conclusion.[5]

Having reviewed the pleadings *de novo*, we are persuaded that Adam has failed to plead a section 1983 violation and that his federal claims must therefore be dismissed. *See Jusino*, 54 F.4th at 100. We further conclude that the district court did not err in its order denying Adam's motion for relief from final judgment, since the allegations Adam sought to add to his complaints – based on the state court's September 2023 order awarding fees for Judith's guardianship – would not have cured the deficiencies in his complaints. *See* Sp. App'x at 20; Sp. App'x Addendum at 17–46. Rather than rendering the complaints non-conclusory, the proposed new allegations simply double down on the theory that the state court judge was conspiring with the other defendants, with the new evidence being yet another state court order that Adam disagrees with. *See* Dist. Ct. Doc. No. 152-1.

---

[5] Adam's assertion that the temporary guardian falsely testified that Adam had not made timely payments for homecare services is contradicted by Adam's own complaint. *See* J. App'x at 190–91 (indicating that between August 13, 2019 and December 23, 2019 Adam failed to pay twelve of thirty-nine invoices by the invoice due date). And the temporary guardian's statement about how many invoices he thought were still outstanding, even if ultimately incorrect, does not support a reasonable inference that the guardian deprived or conspired to deprive Judith or Adam of their federal rights. *Id.* at 163.

12

### III. State-Law Claims

The district court concluded that it could not exercise supplemental jurisdiction over Adam's state-law claims because it lacked original jurisdiction. *See Brook*, 2023 WL 5352773, at *7; 28 U.S.C. § 1367(a). As already explained, the district court erred in concluding that it lacked federal question jurisdiction over Adam's section 1983 claims, so its conclusion that section 1367(a) prohibited it from exercising supplemental jurisdiction was likewise erroneous. Nonetheless, we decline to remand the case to the district court because the exercise of supplemental jurisdiction here would clearly have been an abuse of discretion. Adam's state-law claims vastly outnumber his conclusory section 1983 claims – all of which have now been dismissed – and the case is in its infancy, such that "judicial economy, convenience, fairness, and comity" all "point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (internal quotation marks omitted); *see also id.* at 124 (holding that district court's exercise of supplemental jurisdiction was abuse of discretion); *TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (same). Furthermore, Adam has already asserted many of his state-law claims in another

state-court proceeding, making the exercise of supplemental jurisdiction here particularly inefficient. *See* Complaint, *Estate of Judith Brook v. Joseph Ruotolo*, No. 805045/2024 (Sup. Ct. N.Y. Cnty. Jan. 5, 2024), NYSCEF No. 1.

\* \* \*

We have considered Adam's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court and **DENY** as moot the motion pending at Doc. No. 165.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court